WENDY NOLAN ET AL. *v.* ALAN BORKOWSKI ET AL.
(13236)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued January 13—decision released March 15, 1988

*Herbert Watstein,* with whom, on the brief, was *John F. Warton, Jr.,* for the appellants (plaintiffs).

*Constance L. Epstein,* for the appellees (defendants).

HULL, J. The dispositive issue in this case is whether the named plaintiff, Wendy Nolan, submitted proof of the individual defendants' intent to injure her sufficient to resist the defendants' motion for summary judgment on the ground of the exclusivity of the workers' compensation benefits available to her for those injuries. We agree with the trial court that she failed to raise an issue of material fact as to such intent and therefore we find no error in the court's granting of the motion for summary judgment.

Wendy Nolan[1] brought this action against Alan Borkowski, Larry Przybylski, Raymond M. Pons and

---

[1] The named plaintiff's husband Gary Nolan sought damages for loss of consortium. The trial court ruled that this claim failed with the failure of

Pons Bakery, Inc., for injuries received while she was employed at Pons Bakery, Inc. The first count of the complaint alleged that the individual defendants had wilfully and maliciously disobeyed her doctor's work restrictions which were known to them, thereby causing her injuries. The second count of the complaint claimed liability on the part of Pons Bakery, Inc., on the ground that the named individuals had been acting as its agents.

The defendants filed special defenses alleging that the plaintiff's claims were barred by the exclusive remedy rule contained in General Statutes §§ 31-284[2] and 31-293a[3] of the Workers' Compensation Act. The defendants moved for summary judgment with accompanying affidavits. The plaintiff filed an opposition to this motion with affidavits and a supplemental opposition containing excerpts from a deposition of the plaintiff. The court granted the defendants' motion for summary judgment on the first count on the ground that the plaintiff had failed to raise an issue of fact as to the defendants' intent to injure her. As to the sec-

the wife's cause of action. Gary Nolan's claim is not involved in this appeal and we will in this opinion refer only to the plaintiff Wendy Nolan.

[2] General Statutes § 31-284 provides in pertinent part: "BASIC RIGHTS AND LIABILITIES. CIVIL ACTION TO ENJOIN NONCOMPLYING EMPLOYER FROM ENTERING EMPLOYMENT CONTRACTS. (a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment. . . . All rights and claims between employer and employees . . . arising out of personal injury . . . sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter . . . ."

[3] General Statutes § 31-293a provides in pertinent part: "NO RIGHT AGAINST FELLOW EMPLOYEE; EXCEPTION. If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1."

ond count, the court granted summary judgment on the same basis and also because the plaintiff had failed to show that any of the defendants was the alter ego of the employer corporation. On appeal the plaintiff claims in effect that the court erred in failing to construe the affidavits and the deposition in the light most favorable to her and in finding that the plaintiff had not put the issue of the defendants' intent to injure her sufficiently in dispute to defeat the defendants' motion for summary judgment.

The plaintiff's affidavit contained the following claimed material facts. She began work at Pons Bakery, Inc., in September, 1980, as a general laborer and was advancing well. During the spring of 1981 she began having pain in her back and her leg which resulted in disc removal surgery in January, 1982. She was allowed to return to work on February 28, 1982, with the following written instructions: no bending, no lifting over twenty pounds and no working over forty hours a week. These written restrictions were given to Borkowski and also communicated to Przybylski and Pons. Pons was vice-president and general manager of the bakery and Borkowski and Przybylski were co-supervisors or production managers. The individual defendants violated the doctor's orders by requiring the plaintiff to do work that included bending, pulling one hundred pound racks, lifting one hundred pound sacks of flour, lifting loads of dough weighing up to fifty pounds, loading and unloading trucks and working over forty hours a week.

In June, 1982, after the plaintiff had made numerous requests for relief, she was given a supervisory job which was supposed to relieve her of most heavy physical duties. Borkowski and Przybylski never told her to refrain from doing certain tasks on the job and repeatedly required her to engage in heavy lifting and bending and to work more than forty hours per week.

Excerpts from the plaintiff's deposition before the court contained the following additional factual claims. In the deposition, the plaintiff stated that it was her opinion that Borkowski feared that the plaintiff's performance on the job would place his job in jeopardy. It was also her opinion that Borkowski ordered her to do certain work despite his knowledge of her work restrictions so that she would not be able to continue working. Further, she stated that she "guessed" that by getting rid of her, Borkowski and his friend Keith Briggs got their raises. By August, 1982, the plaintiff had to stop working because of pain and she underwent another operation for a ruptured disc.

The affidavit of the plaintiff's husband, Gary Nolan, declared that he had complained several times to Borkowski, Przybylski and Pons about how they were continuing to make the plaintiff do heavy lifting when they knew she should not. He also stated that when he complained to Borkowski because Borkowski had the plaintiff loading one hundred pound bags of flour into the mix, Borkowski said: "If your wife can't do her job we have no place for her here."

Borkowski's affidavit (1) admitted that he was a manager of the bakery while the plaintiff was employed there, (2) denied that he had wilfully and/or maliciously disobeyed any doctor's instructions regarding the plaintiff or wilfully and/or maliciously ordered or caused the plaintiff to do any heavy lifting, bending or to work over forty hours a week, (3) denied that there was any intent on his part to cause harm to the plaintiff, (4) stated that because of his awareness of the doctor's instructions as to the plaintiff she was placed in a supervisory position in order to facilitate those instructions, and (5) stated that he had personally advised the plaintiff against doing any actions on the job that would be contrary to her doctor's instructions. Przybylski's affidavit was identical to Borkowski's. Pons' affidavit was

also identical to the other two and contained an additional paragraph claiming that he had spoken with Gary Nolan asking him to attempt to ensure that the plaintiff not partake of any activities on the job contrary to her doctor's instructions.

Summary judgment shall be rendered if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Practice Book § 384. The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact. *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984). The court must view the evidence in the light most favorable to the nonmovant. *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980). In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. *Telesco* v. *Telesco,* 187 Conn. 715, 718, 447 A.2d 752 (1982).

In Connecticut the exclusive remedy for an employee injured in the course of employment is provided by the Workers' Compensation Act and, with limited exceptions, suits against fellow employees are barred by General Statutes § 31-293a. *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* 196 Conn. 529, 532, 494 A.2d 555 (1985); *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 97, 491 A.2d 368 (1985); *Davey* v. *Pepperidge Farms, Inc.,* 180 Conn. 469, 471, 429 A.2d 943 (1980); *Jacobs* v. *Crown, Inc.,* 7 Conn. App. 296, 298, 508 A.2d 812 (1986); *Greene* v. *Metal Selling Corporation,* 3 Conn. App. 40, 45, 484 A.2d 478 (1984). The plaintiff could withstand the defendants' motion for summary judgment only if the opposing documentation filed by her raised a genuine issue as to the material fact whether

any of the individual defendants *wilfully* or *maliciously* wronged her.

The issue in this case is whether the plaintiff's affidavit and accompanying documentation meet the test of *Mingachos* v. *CBS, Inc.,* supra, 102, in which this court held that the statutory exception of "wilful or malicious" conduct requires a showing of an actual intent to injure the plaintiff. "To bypass the exclusivity of the act, the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted. Such a concept is nothing new to our jurisprudence. Once recently, drawing on our earlier cases, we said: ' "A wilful and malicious injury is one inflicted intentionally without just cause or excuse. It does not necessarily involve the ill will or malevolence shown in express malice. Nor is it sufficient to constitute such an injury that the act resulting in the injury was intentional in the sense that it was the voluntary action of the person involved. Not only the action producing the injury but the resulting injury must be intentional." *Rogers* v. *Doody,* 119 Conn. 532, 534, 178 A. 51 (1935). "A wilful or malicious injury is one caused by design. Wilfulness and malice alike import intent. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances." *Sharkey* v. *Skilton,* 83 Conn. 503, 507–508, 77 A. 950 (1910). The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act. *Alteiri* v. *Colasso,* 168 Conn. 329, 334, 362 A.2d 798 (1975).' *Markey* v. *Santangelo,* 195 Conn. 76, 77–78, 485 A.2d 1305 (1985)." Id., 102–103.

*Mingachos,* however, is not on all fours with the present case. In that case the plaintiffs alleged wilful and malicious acts by the defendant employees. This court stated: "In this motion for summary judgment, affidavits were filed. Practice Book § 381. Each defend-

ant employee gave his affidavit personally, specifically disavowing, inter alia, any 'wilful intent' to violate any [Occupational Safety and Health Administration Act (OSHA)] regulation and each indicating that on the day in question he had spent time in the same area where the accident involved occurred. On the other hand, the only affidavit submitted by the plaintiff was one signed by his attorney, which, after referring to certain attached, unverified, OSHA records, averred that '[t]hese exhibits indicate that the employer was aware of the need for ventilation where the explosion occurred; that the lack of ventilation presented a dangerous condition'; and that '[t]he employer did nothing to correct the need for ventilation until after the accident which killed the decedent.' The record before us on this motion for summary judgment does not disclose that the plaintiff put into dispute the statements of the employees in their affidavit that each had no intent to injure the decedent. There was no genuine issue of material fact. Rather, with the exclusivity of the act, an issue of law emerged and summary judgment was properly granted on all counts of the amended complaint." Id., 114. Although the plaintiff's documentation in the instant case goes beyond that in *Mingachos,* we agree, nevertheless, with the defendants' contention that *Mingachos* is ultimately dispositive of the present case.

The plaintiff claims that the requisite intent may be implied from the conduct and circumstances in this case, citing *Mingachos* v. *CBS, Inc.,* supra, 102. She argues that the defendants' conduct viewed in the light most favorable to the plaintiff easily rises to a level " ' "where the known danger [of injury] ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a substantial certainty," ' " citing *Mingachos* v. *CBS, Inc.,* supra, 103.

The plaintiff relies principally on the case of *Batick* v. *Seymour,* 186 Conn. 632, 443 A.2d 471 (1982). In

*Batick,* the plaintiff in a negligence action alleged in the second count that the named defendant had fraudulently conveyed certain realty to his defendant wife. The trial court granted the defendants' motion for summary judgment on that count. The named defendant driver's affidavit stated that he never suspected that Batick would have any claim against him for the accident and that the conveyance of the real estate to his wife was the result of estate planning and a promise he had made to her before marriage. The affidavit of the named defendant's attorney confirmed that he had been consulted by both the named defendant and his wife and that he had advised that the husband transfer a one half interest in the real estate as part of their estate plan. He also said that he knew of the accident at that time but did not anticipate that the plaintiff would bring suit. Id., 644.

The court stated that "[t]he plaintiff chose not to file an opposing affidavit, presumably because he had no personal knowledge of the mental state which influenced the defendant to quitclaim a one half interest in his house to his wife." Id. The plaintiff filed a memorandum of law opposing the motion for summary judgment on the ground that the named defendant had failed to show " 'the non-existence of any genuine issue as to all material facts . . . .' " Id., 645.

In finding error in the trial court's granting of the defendants' motion for summary judgment, the court stated: "We first must consider the effect of the plaintiff's failure to file an opposing affidavit in the summary judgment proceeding. Practice Book § 380 provides that '[t]he adverse party . . . shall file opposing affidavits and other available documentary evidence.' The plaintiff did attach copies of the quitclaim deed which effectuated the transfer and a deposition taken of the defendant in which he admitted that he and his wife were aware of the plaintiff's serious inju-

ries at the time the deed was executed. There is no reason to suppose that the plaintiff had personal knowledge of any of the facts relating to the transfer. His proper course would have been to file an affidavit stating that he could not, 'for reasons stated, present facts essential to justify his opposition . . . .' Practice Book § 382. *Dorazio* v. *M.B. Foster Electric Co.*, 157 Conn 226, 253 A.2d 22 (1968). Nevertheless, the court was not entitled to assume the truth of the defendant's declarations concerning his intentions in making the conveyance simply because of the absence of an affidavit contradicting them. It was clear from the documents filed by the plaintiff with his memorandum of law that there was a genuine dispute over the defendant's intentions and that the plaintiff had done everything he could to present facts to controvert the defendant's assertion that the transfer was unrelated to the accident. The inference which may ordinarily be drawn from the failure of a party to file an opposing affidavit is not warranted where the other party is the only person having knowledge of the particular facts involved. 'Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' Practice Book § 381. In no way could the plaintiff have complied with these requirements of the rule in an affidavit pertaining to the defendant's mental state at the time of the transfer. Although it would have been preferable for the plaintiff to have followed the procedure of explaining his predicament in accordance with Practice Book § 382, we do not regard his failure to do so as fatal, since his inability to file an opposing affidavit was obvious." *Batick* v. *Seymour*, supra, 645–46.

The *Batick* court pointed out that "[t]here are situations . . . which do not lend themselves to summary

disposition. 'It is . . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions.' " (Citations omitted.) Id., 646–47. The court, relying on *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 380, 260 A.2d 596 (1969), stated that the test is whether a party would be entitled to a directed verdict on the same facts. *Batick* v. *Seymour,* supra, 647. Finally, the court concluded that the jurors would not have been compelled to believe the defendant's declarations about his motive in executing the deed to his wife. Id.

In order to agree with the plaintiff's claim that *Batick* controls this case, we would be required to read it as holding that a summary judgment may never be rendered in a case involving intent. We decline to hold that the *Batick* decision cast such a wide net. *Batick* decided that under the circumstances of that case the absence of a counteraffidavit did not justify the granting of a summary judgment. The defendant knew at the time of the deed that the plaintiff was paralyzed, his spinal cord being severed, and that the defendant's automobile liability insurance policy was limited to $25,000. Id., 637. Further, "[t]he rule is well established that evidence is admissible that a person after the happening of an accident, or the occurrence of some other event which might render him liable, disposed of his property, on the ground that such evidence tends to show a consciousness of liability and a purpose to evade satisfaction of it. 29 Am. Jur. 2d, Evidence § 274, p. 322; see, e.g., *Poston* v. *Gaddis,* 372 So. 2d 1099, 1102 (Ala. 1979); *Bush* v. *Jackson,* 552 P.2d 509 (Colo. 1976); *Portland Gas Light Co.* v. *Ruud,* 242 Mass. 272, 136 N.E. 75 (1922); *Cox* v. *Wright-Hennepin Cooperative Electric Assn.,* 281 Minn. 228, 161 N.W. 2d 294 (1968)." *Batick* v. *Seymour,* supra, 635.

It is quite another matter to allege that a fellow employee intended to injure the plaintiff by pushing her to work beyond her doctor's restrictive orders for the reasons the plaintiff claims in this case. Here we are faced not with the narrow issue of the effect of the opponent of a summary judgment motion not filing an affidavit but with a case in which the documentation filed illuminates the issue involved and reveals the lack of a genuine issue of the material fact of intent when viewed in the circumstances of the case. "Since these allegations require the plaintiff to undertake the difficult challenge of providing evidence, in advance of trial, of the mental state of the defendant . . . we are willing to take into account whatever relevant information the plaintiff was able to provide. See *Batick* v. *Seymour,* [supra, 645–46]." *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 217, 455 A.2d 857 (1983).

The claimed acts of all three individual defendants in and of themselves were neutral. They might just as reasonably have occurred in the normal process of production at the bakery. The plaintiff offered broader proof against Borkowski in the excerpts from her deposition contained in the record. An examination of her claims in the deposition clearly reveals the speculative basis of her testimony. She was asked by counsel why she thought that with Keith Briggs, a male, available to do work, Borkowski would nevertheless tell her to do it, knowing she was under work restrictions. She replied, "My opinion . . . he didn't want to upset Keith. . . . [A]s long as I was there . . . . Al [Borkowski] knew his job was in jeopardy because at any time I could step in and take over his job. . . ." When asked why Borkowski would want to give Briggs a raise she replied, "I guess by getting rid of me Keith and Al got their raises." When asked why Borkowski would care whether Briggs got a raise, she replied that they were best friends and that it was "possible" she was in Briggs'

way. Such speculative evidence above cannot serve as a basis for opposition to a motion for summary judgment. "Viewed as a whole and in context, the [plaintiff's] testimony is too speculative, too conjectural, to be evidence of [intent]." *Acampora* v. *Asselin,* 179 Conn. 425, 427, 426 A.2d 797 (1980); see *Citizens National Bank* v. *Hubney,* 182 Conn. 310, 312, 438 A.2d 430 (1980). "The bare assertions before the trial court would not have supported a judgment for the plaintiff and the summary judgment was, therefore, properly rendered." *Kakadelis* v. *DeFabritis,* 191 Conn. 276, 281, 464 A.2d 57 (1983). The court did not err in granting the individual defendants' motion for summary judgment.

As a result of the summary judgment for the three individual defendants the plaintiff's second count against the employer Pons Bakery, Inc., based as it must be on the "wilful and malicious" conduct of one or more of the three named employees, must also fail. We therefore do not reach the question whether the plaintiff's allegations and proffered proof are sufficient to satisfy the "alter ego" exception to the exclusivity of the plaintiff's workers' compensation remedy, as set forth in *Jett* v. *Dunlap,* 179 Conn. 215, 219, 425 A.2d 1263 (1979).

There is no error.

In this opinion PETERS, C. J., SHEA and COVELLO, Js., concurred.

CALLAHAN, J., dissenting. I respectfully take issue with the result reached by the majority because it is contrary to the principles regarding summary judgment and to the case law discussed in the majority's opinion. It is clear from the opinion that the majority followed the erroneous logic of the trial court that resulted in an impermissible shift of the initial burden in a summary judgment motion to the nonmovant. In addition,

the trial court abused its discretion by deciding a material issue of fact contrary to its limited function when deciding a motion for summary judgment.

The fundamental principles of summary judgment procedure, although noted in the decisions of the trial court and the majority, were ignored in the analyses of each court. It is the movant, here the defendants, that bears the initial, heavy burden of demonstrating by way of affidavits and other documentary proof, not only his entitlement to judgment as a matter of law, but also the nonexistence of a genuine issue of material fact. See Practice Book §§ 380, 384; *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984); *Kakadelis* v. *DeFabritis,* 191 Conn. 276, 280–81, 464 A.2d 57 (1983). It is only after the movant has met this burden, that the opponent bears the burden of presenting facts which contradict those offered by the movant. *Citizens National Bank* v. *Hubney,* 182 Conn. 310, 311, 438 A.2d 430 (1980).

The test for granting a motion for summary judgment is the same as in a directed verdict, which is viewing the evidence and the inferences therefrom *"most favorably to the nonmovant,* the trier of fact could not reach *any other conclusion* than that embodied in the verdict as directed."* (Emphasis added.) *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 380, 260 A.2d 596 (1969); see also *DHR Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980). Most important, in ruling on a motion for summary judgment the trial court's limited function is not to decide issues of material fact, but rather only to determine whether any exist. *Telesco* v. *Telesco,* 187 Conn. 715, 718, 447 A.2d 752 (1982); *Batick* v. *Seymour,* 186 Conn. 632, 647, 443 A.2d 471 (1982).

After noting the general boiler plate language regarding summary judgment procedure, the trial court begins

its analysis by indicating that the plaintiff employee's right to pursue common law remedies was limited by the adoption of the Workers' Compensation Act, and to bypass the exclusivity provisions of the act the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted. The trial court then makes reference to the affidavits and deposition transcript submitted by the plaintiff and acknowledges that these documents state conduct on the part of the defendants that show an intent to cause the injury which resulted. Then without indicating whether the defendants met either of their two burdens and without any analysis or legal reasoning, the trial court baldly concludes that the plaintiff failed to put the defendants' intent into dispute. It is clear that the trial court, in recognition of the limited scope of the "wilful or malicious" exception to the exclusivity provision of the Workers' Compensation Act under General Statutes § 31-293a, and in recognition of the plaintiff's difficult burden of proof at trial, decided from the documents submitted by the plaintiff that she failed to prove that the defendants' conduct evidenced the requisite intent sufficient to come within the exception. The trial court thus erroneously decided the merits of the plaintiff's action rather than simply determining that no genuine issue of material fact existed. While the plaintiff may not be able to prevail at trial by a preponderance of the evidence, the affidavits she submitted along with her deposition transcript clearly contradict and put into issue the statements contained in the affidavits submitted by the defendants. Under such circumstances the trial court erred in granting summary judgment for the defendants. See *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 114, 491 A.2d 368 (1985).

I also dissent from the conclusion of the majority and the trial court because of the well established principle of law that ordinarily summary judgment procedure

is particularly inappropriate where, as here, the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. *Batick* v. *Seymour,* supra, 646–47; *United Oil Co.* v. *Urban Redevelopment Commission,* supra, 376; see *White Motor Co.* v. *United States,* 372 U.S. 253, 259, 83 S. Ct. 696, 9 L. Ed. 2d 738 (1963); *Poller* v. *Columbia Broadcasting Systems, Inc.,* 368 U.S. 464, 472–73, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962). Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case. *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 216–17, 477 A.2d 988 (1984); *State* v. *Just,* 185 Conn. 339, 355, 441 A.2d 98 (1981); *Munn* v. *Scalera,* 181 Conn. 527, 530–31, 436 A.2d 18 (1980); *State* v. *Avcollie,* 178 Conn. 450, 466, 423 A.2d 18 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980); *Bergen* v. *Bergen,* 177 Conn. 53, 57, 411 A.2d 22 (1979); *Heffernan* v. *New Britain Bank & Trust Co.,* 175 Conn. 8, 12, 392 A.2d 481 (1978).

The case at hand undoubtedly raises an issue of material fact regarding the defendants' intent to cause the injury to the plaintiff which must be inferred from the acts and conduct of the defendants coupled with their knowledge of the written orders of the plaintiff's doctor. The documents submitted by the plaintiff set forth specific acts of the defendants to demonstrate the defendants' intent. As the majority states, " '[a] wilful or malicious injury is one caused by design. . . . [I]ts characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances.' [Citation omitted.] The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act." Given the fact that the affidavits of the plaintiff directly contradict those of the defendants

on this score, one could not reasonably conclude that the conflicting affidavits did not at least put the statements contained therein in dispute. Consequently, a genuine issue of material fact existed which the trial court resolved in favor of the defendants contrary to its limited function in deciding motions for summary judgment.

Additionally, in order to grant summary judgment here, the trial court must have been able to conclude that a trier of fact could not have reached any other conclusion. The conflicting affidavits alone regarding the defendants' intent mandates otherwise. Part of the majority's reasoning also indicates to the contrary. In response to the plaintiff's claim that the acts of the defendants were intentionally designed to cause the injuries to her, the majority states that the acts of the defendants *"might* just as reasonably have occurred in the normal process of production at the bakery." (Emphasis added.) Clearly this indicates that it was reasonable to conclude either way.

Further, the only way in which the trial court or the majority could have concluded that the plaintiff failed to place the defendants' intent into issue was to discredit the plaintiff's affidavits and to credit the defendants.' Absent obvious misstatements within the affidavits, neither court should have judged the credibility of the respective affiants for " '[i]t is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given to their testimony can be appraised.' *Poller* v. *Columbia Broadcasting Systems, Inc.,* supra, 473; *Fortner Enterprises, Inc.* v. *United States Steel Corporation,* 394 U.S. 495, 500, 89 S. Ct. 1252, 22 L. Ed. 2d 495 [1969]." *United Oil Co.* v. *Urban Development Commission,* supra, 376. The majority clearly judged the credibility of the plaintiff because the majority dispelled as speculative her opinions regarding the defendants' possible motives for

512

intending to cause her injuries. The true issue here is whether the acts and conduct of the defendants evidence the necessary intent and motive to cause the injuries that resulted to the plaintiff as required by § 31-293a. This court has recognized the inappropriateness of summary judgment with regard to matters, such as intent and motive, that are clearly within the exclusive knowledge of the defendants. *Batick* v. *Seymour,* supra. In *Batick* this court reversed the entry of a summary judgment for a defendant where the plaintiff submitted no affidavits in opposition to the motion because of the virtual impossibility of demonstrating the intent or motives of another in an affidavit.

Accordingly, I would reverse the trial court and order the matter remanded for a trial on the merits.