[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The issue in this motion for summary judgment deals with the timing of the discovery of the plaintiff's injury caused by the negligence or malpractice of the defendant physician.[1] The purpose of this determination is to fix the period of time in which the plaintiff had to file suit in order to avoid the pitfalls of the statute of limitations, General Statutes § 52-584.[2]
The parties do no dispute the following facts giving rise to this medical malpractice action. The plaintiff engaged the services of the defendant, Dr. Stephen Brown, to undertake the care and treatment of her leg, in particular to surgically excise a malignant melanoma from the plaintiff's right thigh. The defendant doctor performed the surgery on October 6, 1989. The plaintiff's last visit with Dr. Brown was on November 2, 1989. The plaintiff made an appointment and saw Dr. Gary Russolillo, a plastic surgeon, for a second opinion on November 9, 1989. The plaintiff had an appointment with the defendant on November 9, 1989, but did not keep that appointment. On November 17, 1989, the plaintiff wrote a letter to the Department of Health Services complaining that Dr. Brown was negligent in treating her and stating that she was no longer treating with him.
The defendant argues that the statute of limitations runs from November 9, 1989, the date on which the plaintiff had her last scheduled appointment with Dr. Brown but did not keep. The defendant claims that the plaintiff never intended to return to Dr. Brown after November 9, 1989.
The plaintiff argues that the services of Dr. Brown were not terminated on November 9, 1989, but rather on November 17, 1989. The plaintiff claims that she could not attend the appointment scheduled with Dr. Brown on November 9, 1989, because the appointment with Dr. Russolillo ran over in time. The plaintiff argues that the statute of limitations runs from November 17, 1989, the date the plaintiff wrote a letter to the Department of Health Services complaining about the negligence of Dr. Brown. The plaintiff's claim is that there was a continuous course of treatment that tolled the statute of limitations until the services of Dr. Brown were terminated by the statement of the plaintiff in her letter of November 17, 1989.
On November 12, 1991, the plaintiff obtained a ninety-day extension of the statute of limitations pursuant to General Statutes § 52-190a(b).[3] On February 10, 1992, the plaintiff placed a writ, summons and complaint in the hands of a deputy sheriff for CT Page 11555 service upon the defendant. The plaintiff relies upon General Statutes § 52-593a,[4] which provides that prior to the expiration of the extended statute of limitations, the sheriff had an additional fifteen days to serve the defendant. On February 18, 1992, the sheriff served the writ, summons and complaint on the defendant pursuant to General Statutes § 52-593a.
We are called upon to decide whether the statute of limitations in this action began to run on November 9, 1989, or on November 17, 1989. If the statute ran from November 9, 1989, the two year period provided for in § 52-584 plus the ninety-day extension pursuant to § 52-190a(b) would have expired on February 6, 1992. If we conclude that November 17, 1989, was the start of the running of the statute of limitations, the two years plus the ninety-day extension, ran on February 15, 1992, and, since the plaintiff delivered the process to the sheriff on February 10, 1992, the statute of limitations would not have run on this action.
The defendant claims that November 9, 1989, was the key date based upon the plaintiff's responses to interrogatories showing that the plaintiff knew of her injury by November 9, 1989, or should have recognized the link between her alleged injury and the defendant's conduct on November 9, 1989.
In her letter to the Department of Health dated November 17, 1989, the plaintiff states that she had scheduled an appointment with Dr. Brown on November 9, 1989. The letter went on to recite that on November 7th:
 the wound would not stop leaking so I went to the Bristol Medhelp Center. The wound was cleaned, redressed and I was given a prescription for an antibiotic. When I asked what type of scarring I would have, I was told that it would be a large scar, and that it would have to heal at least one year before plastic surgery could be done.
 At this point I decided to schedule an appointment for a second opinion with a plastic surgeon.
The second opinion was obtained from Dr. Russolillo on November 9, 1989.
It is unclear from the facts recited by the plaintiff and the defendant whether the plaintiff terminated her relationship with Dr. Brown on November 9, 1989, the date of her last appointment CT Page 11556 with him, or on November 17, 1989, when the plaintiff wrote her letter to the Department of Health Services. It is unclear to us on November 9, 1989, whether the plaintiff saw Dr. Russolillo for a second opinion of the services provided by Dr. Brown or whether she intended to terminate the services of Dr. Brown.
The function of the court, in considering a motion for summary judgment, is to determine whether or not any genuine issues of fact exist. Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031
(1988). We recognize that the moving party in a motion for summary judgment bears the burden of showing the nonexistence of any material fact. Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 579, 573 A.2d 699 (1990). The opposing party, on the other hand, has the burden of showing the existence of issues of material fact. Id. A material fact "has been defined adequately and simply as `a fact which will make a difference in the result of the case.'" Id., 578.
We are unable to determine whether the plaintiff not only knew of her injury by November 9, 1989, but also recognized that there was a connection between her alleged injury and the defendant's conduct. It is clear that the plaintiff, on November 17, 1989, knew that she had an injury which she alleged was caused by the defendant's conduct.
The plaintiff's affidavit attached to her brief in opposition to the motion for summary judgment recites that she did not cancel her November 9, 1989 appointment with Dr. Brown and that she was unable to keep the November 9th appointment because her appointment with Dr. Russolillo went longer than she had anticipated. The plaintiff also recites in her affidavit that she did not terminate her relationship with Dr. Brown prior to November 17, 1989.
Our Supreme Court has held that the statutory period does not commence to run, under the continuous treatment doctrine, until the doctor's treatment has been terminated. Blanchette v. Barrett,229 Conn. 256, 274, 640 A.2d 74 (1994). To toll the statute of limitations under the continuous treatment doctrine, the jury must find: (1) an ongoing physician-patient relationship that had not terminated on November 9, 1989, the last time the plaintiff had an appointment with the defendant; (2) the negligence by the defendant in 1989; and (3) some form of treatment or required conduct that continued beyond November 9, 1989. Id., 278.
The determination of whether the physician-patient relationship CT Page 11557 has terminated depends on several factors which have been enumerated by the Court in Blanchette. Blanchette v. Barrett, supra, 229 Conn. 278. These factors include "the subjective views of the parties." Id. Obviously, the views of the parties are an issue of fact which cannot be decided by this court on a motion for summary judgment.
Because a genuine issue of material fact remains with respect to the date upon which the statute of limitations began to run, the motion for summary judgment is denied.
Arnold W. Aronson Judge of the Superior Court