[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Raccolta, Inc. ("Raccolta") seeks summary judgment of strict foreclosure of the realty located at 535 Connecticut Avenue, Norwalk, Connecticut (the "Realty") against the defendants, BBS Norwalk One, Inc. ("BBS"). Hall Investments, Ltd., Parker, Chapin, Flattau Klimpl, LLP US GI, Inc.
The original transaction dates back to a promissory note dated July 25, 1985, (the "First Note"), in which Richard A. Engelke and Stephen Gulick, Jr. promised to pay to the order of Chase Manhattan Bank (National Association ("Chase") the principal sum of $21,000,000 plus interest. The First Note was secured by a mortgage deed dated July 25, 1985, (the "First CT Page 6805 Mortgage") from Richard A. Engelke and Stephen Gulick, Jr., in favor of Chase on the Realty. The First Mortgage was recorded on July 26, 1985, in volume 1733 at page 47 of the Norwalk Land Records.
A series of transfers of ownership of the Realty then occurred. Richard A. Engelke and Stephen Gulick, Jr., the original owners of the Realty, transferred their right, title and interest in the Realty to Norwalk Twin Towers Associates. This transfer is evidenced by a quitclaim deed dated February 22, 1988, and recorded on March 28, 1988, in volume 2177 at page 351 of the Norwalk Land Records.
Norwalk Twin Towers Associates then transferred its right, title and interest in the Realty to Norwalk Twin Towers, Inc. as evidenced by a quitclaim deed dated March 14, 1988, and recorded on March 16, 1988, in volume 2314 at page 15 of the Norwalk Land Records.
Norwalk Twin Towers, Inc. transferred all of its rights, title and interest in the Realty to BBS, the present owner, as evidenced by a deed dated September 27, 1991, and recorded on September 30, 1991 in volume 2581 at page 318 of the Norwalk Land Records.
Upon taking ownership of the property on September 27, 1991, BBS and Chase executed certain documents wherein BBS assumed the obligations under the First Note and Mortgage with certain modifications.
Also, on September 27, 1991, BBS executed a promissory note in favor of Chase in the original principal sum of $2,494,896 (the "Second Note").
The obligations evidenced by the Second Note are secured by a mortgage of the Realty from BBS to Chase ("Second Mortgage"). The Second Mortgage encumbers the same property as the First Mortgage. The Second Mortgage was recorded on September 30, 1991, in volume 2582 at page 1 of the Norwalk Land Records.
The First Note, First Mortgage, Assumption Agreement and Mortgage Modification Agreement were transferred and assigned to Raccolta, a New York corporation, by assignment dated March 15, 1994, and recorded March 21, 1994, in volume 2920 at page 135 of the Norwalk Land Records. CT Page 6806
The Second Note and Second Mortgage were transferred and assigned to Raccolta by assignment dated March 15, 1994, in volume 2920 at page 138 of the Norwalk Land Records.
On August 1, 1996, Raccolta and BBS entered into a Note and Mortgage Consolidation, Modification and Extension Agreement, recorded on August 21, 1996, in volume 3248 at page 35 of the Norwalk Land Records ("Modification Agreement.") The Modification Agreement, inter alia, extended the maturity date to April 30, 1997, reduced the interest rate and waived the right to demand certain interest at the Involuntary Rate set forth in the Notes and Mortgages. BBS agreed to pay an extension fee of $360,000.00 and a late payment premium of $75,000.00 if the amount due at maturity was not paid.
On October 1, 1997, Raccolta and BBS entered into aStipulation Regarding Value of Mortgaged Property which reads as follows:
"For the purposes of plaintiff's Motion For Summary Judgment, plaintiff and defendant stipulate that the value of the Realty described in plaintiff's complaint is substantially in excess of the debt due plaintiff. This stipulation is not intended to be an admission as to the amount or existence of any debt due from BBS Norwalk One, Inc."
BBS has interposed four special defenses. The court finds the defenses are without merit. In the Modification Agreement, BBS acknowledged (a) the validity and the enforceability of the notes and mortgages, and (b) that BBS had no defenses as of the date of the Agreement.
Paragraph 10 of the Consolidated Agreement provides:
 "Borrower hereby represents and warrants that, as of the date hereof, except for claims asserted in BBS Norwalk One, Inc. v. Raccolta, Inc. and Stephen Nicholas Bunzl in District Court of the Southern District of New York, 95 CIV 4138 (MGC), Borrower has no claims, counterclaims, defenses, offsets, demands, causes of action or rights of any kind or nature against Lender whether at law or in equity and whether direct or indirect or contingent or noncontingent arising out of or relating to (a) it obligation to pay the Consolidated Indebtedness and interest thereon, (b) any other obligation of Borrower under the Existing Notes and/or CT Page 6807 the existing Mortgages, each as consolidated and modified hereby, and (c) any act or omission of Lender or any officer, director, attorney, agent or representative of Lender. Further, Lender and Borrower agree that the execution and delivery of the Agreement shall have no effect whatsoever on the above-described litigation."
The claims in the New York action do not relate to the making, validity and the enforcement of the notes and mortgages which are the subject matter of this suit. The Modification Agreement preserves BBS right to continue to prosecute the New York action while waiving any other claims against Raccolta.
The New York action is a civil action claiming a breach of the fiduciary duty to BBS by one of its directors. BBS alleges that Raccolta and others knowingly aided and abetted Hugo Bunzl in wrongfully diverting to a corporation owned by Hugo Bunzl, the opportunity to purchase the mortgage on the Realty from Chase at a substantial discount.
The stipulation entered into by the parties in the New York Action on May 17, 1997, (the "Stipulation") makes clear what the parties intended in the event that plaintiff foreclosed while the New York Action was pending. The Stipulation, which was entered into after the Modification Agreement, provides in paragraph 2:
 "$3,000,000 of the amount Raccolta receives in satisfaction of the Mortgage (the "Funds") shall be kept in the name of the defendants in a securities account (the "Account") in the United States office of a United States brokerage company ("Brokerage Firm"). The Funds are only to be invested in a money market fund and/or any publicly traded securities. Such investments shall be made at the discretion of the defendants. Nothing contained herein shall prohibit the Funds from being transferred from one Brokerage Firm to another Brokerage Firm."
Thus, the parties clearly contemplated that the Mortgages would be satisfied by foreclosure or otherwise, prior to the resolution of the New York Action.
It should be noted that summary judgment is not sought nor is it granted at this time against defendant Hugo Bunzl, a resident of Great Britain, because service of process under the Hague Convention has been unsuccessful.
CT Page 6808
 "The judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384.
 Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp. , supra, 233 Conn. 732, 751.
 "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party[.]" (Internal quotation marks omitted.) Home Ins. Co. v. Aetna Life Casualty Co., supra, 235 Conn. 185, 202.
 "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) United Oil Co. v. Urban Development Commission, supra, 158 Conn. 379. "Issue of fact encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." (Internal quotation marks omitted.) Id.
 "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988).
 The nonmovant has the burden of demonstrating the absence of any genuine issue of material fact. Gupta v. New Britain General Hospital, supra, 239 Conn. 582. "The nonmovant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . ." (Internal quotation marks omitted.) Miller v. United Technologies Corp. , supra, 233 Conn. 751-52.
 "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Emphasis in Original.) Gupta v. New Britain General Hospital, supra, 239 Conn. 582.
 "Summary judgment is appropriate if there are genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Busconi v. Digliello, 39 Conn. App. 753, 761, CT Page 6809 cert. denied, 236 Conn. 903
The court finds that there are no genuine issues of material fact and that summary judgment of foreclosure by sale thereby is ordered. Judgment of foreclosure by sale is ordered because the parties have stipulated that the value of the Realty is substantially in excess of the debt due the plaintiff.
The current debt, sale date, legal fees, etc., can be fixed at a future short calendar.
So Ordered.
Dated at Stamford, Connecticut, this 29th day of June, 1998.
Richard J. Tobin, Judge.