[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant has filed a motion for summary judgment, claiming that the plaintiffs medical malpractice action is barred by the applicable statute of limitations. The plaintiff, in response, filed memoranda in opposition arguing that even if the court can not conclusively find that the his action was filed within the requisite time period, defendants motion should still be denied because of material facts in dispute.
I. FACTUAL BACKGROUND
CT Page 4048
It is undisputed that the plaintiff, Frederick Kanaher, sought treatment from the defendant, Dr. Richard Berkeley, a psychiatrist, for attention deficit hyperactivity disorder. The parties concur that the defendant prescribed Dexedrine for the plaintiff. There is also no dispute that the plaintiff treated with the defendant from August 18, 1992 through, at least, August 23, 1993. Both parties agree that, on August 23, 1993, the last day that the plaintiff saw the defendant in his office, the defendant increased his dosage of Dexedrine. Following the August 23, 1993 office visit, the plaintiff moved to New York to attend law school although he remained a Connecticut resident. The plaintiff did not seek treatment from any other physician until October, 1993, after he claims to have spoken with the defendant about adverse reactions he was having due to the Dexedrine. The plaintiff claims and the defendant denies that the defendant told the plaintiff to eat when he was taking the medications during a conversation in early September, 1993. Towards the end of September, 1993 the plaintiff claims and the defendant denies that they spoke again because of the plaintiff's persistent problems with the Dexedrine. The plaintiff claims, that during this second call the defendant suggested, for the first time, that he consult with another physician in New York.
The plaintiff consulted with Dr. Inwood, in New York, who he says may have told him of his Dexedrine toxicity in October, 1993. Plaintiff's father testified during his deposition that Dr. Inwood notified he and his wife that the plaintiff was suffering from Dexedrine toxicity caused by an overdose of Dexedrine. The plaintiff was definitively diagnosed with Dexedrine psychosis in January, 1994 at the Institute of Living.
Although the plaintiff admits that there was no contact with the defendant after October, 1993,[1] he claims that the physician-patient relationship continued beyond that date. The defendant maintains that the doctor-patient relationship terminated in August, 1993. There is no documentation in the medical records indicating that the parties terminated their doctor-patient relationship in August, 1993.
On January 6, 1994, plaintiff learned from a physician at the Institute for Living that he suffered from Dexedrine psychosis. It wasn't until 1996, however, that he learned of expert opinions that the defendants treatment may have deviated from the standard of care. On July 6, 1995 the plaintiff filed a petition for a ninety CT Page 4049 day extension of the statute of limitations which was granted on July 12, 1995. In the petition, the plaintiff identified the expiration date of the statute of limitation as August 1, 1995. Plaintiff commenced his lawsuit on March 24, 1996.
II. ISSUES TO BE DECIDED
The issues for this court to decide are: whether there is any dispute as to the date the plaintiff "discovered or should have discovered" his injury; whether the statute of limitations was tolled by any act or event; and whether this court can conclude as a matter of law that plaintiffs action was not brought within the requisite statute of limitations. For reasons more fully explained in this decision, this court holds that because certain material issues of fact are in dispute, the motion for summary judgment must be denied.
III. LEGAL DISCUSSION A. STANDARD FOR MOTION FOR SUMMARY JUDGMENT
A party is entitled to summary judgment wherever "the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Connecticut Practice Book section 17-49; Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 105 (1994); Telesco v. Telesco, 187 Conn. 715
(1982). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.]" (Internal quotation marks omitted.) Home Ins.Co. v. Aetna Life Casualty Co. 235 Conn. 185, 202-03 (1995). A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279 (1989). "In ruling on a motion for summary judgment, the courts function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988).
"Summary judgment may be granted where the claim is barred by the statute of limitations." Doty v. Mucci, 238 Conn. 800, 806,679 A.2d 945 (1996). Summary judgment is appropriate on the statute of limitation grounds when the "material facts concerning the statute of limitations [are] not in dispute . . ." Burns v.Hartford Hospital, 192 Conn. 451, 452, 472 A.2d 1257 (1984). In CT Page 4050 Connecticut, the statute of limitations must be pled as a special defense. Connecticut Practice Book, section 10-50. "When a defendant raises the statute of limitations as a special defense the essential elements of the defense become" material facts which, if proven at trial, will entitle the defendant to judgment as a matter of law. Therefore, when the materials submitted in support of a defendants motion for summary judgment incontrovertibly establish all the essential elements of his statute of limitations defense, his motion must be granted."Mulcher v. Sokolowski, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. CV 38 18 04 (January 13, 1994, Sheldon, J., 1994 Ct. Sup. 319).
 B. APPLICABLE STATUTORY PROVISIONS
This medical malpractice action is governed by two statutory provisions. The first is found in section 52-584 of Connecticut General Statutes. It reads in pertinent part, as follows:
 "No action to recover damages for injury to the person, . . . caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician . . ., shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of. . . ."
Pursuant to this statute an action must be brought within 2 years of discovery of an injury or not more than 3 years from the date of the negligent act or omission. The facts sufficient to trigger the applicable sections of the statute are significant, in this case, because the plaintiff did not file suit until 1996, almost 3 years after the plaintiff's last visit with the defendant.
The second applicable statutory provision in this case is section 52-190a(b) of C.G.S. which provides that:
 "Upon petition to the clerk of the court where the action will be filed, an automatic ninety-day extension of the statute of limitations shall be granted to allow the reasonable inquiry required by subsection (a) of this section. This period shall be in addition to other tolling periods." CT Page 4051
Because the plaintiff filed a petition pursuant to §52-190a(b) he extended the statute for 90 days.
 C. DATE OF THE DISCOVERY OF THE INJURY
The defendant argues that the because the allegedly wrongful conduct took place no later than August, 1993, the statute of limitations must have begun to run in August of 1993. Under this theory the statute of limitations expired in August, 1995. The plaintiff counters that the statute of limitations does not commence to run until the plaintiff discovers both that he suffers an actionable harm and the cause of that harm. Actionable harm, the plaintiff contends, is both the learning of and the understanding of the injury and its cause(s).
In Burns v. Hartford Hospital, 192 Conn. 451, 460,460 A.2d 1257 (1984), the Supreme Court held that the statute of limitations begins to run when the plaintiff learns of his/her injury. Referring to the statutory language, which states that an action shall be brought within two years from the date the injury
is first sustained or discovered, the court explained that:
 "[in this context an injury occurs when a party suffers some form of actionable harm. The harm need not have reached its fullest manifestation before the statute begins to run.
What factual findings are necessary in order to conclude that a patient "discovers" his/her injury, has been the subject of some discussion. As the excerpt from Burns, indicates, "discovery of an injury" requires something less than a full realization of the extent of ones injuries and the cause thereof.
In order to start the running of the statute of limitations the patient must discover "actionable harm". The Supreme Court also addressed the subject of what constitutes "actionable harm" and discovery in Catz v. Rubenstein, 201 Conn. 39, 43 (1986). InCatz, plaintiff's decedent, a patient of the defendant, consulted him after she felt a lump in her breast. The defendant told her that there was nothing to worry about after he examined her and ordered a mammogram. In 1980, when plaintiffs decedent found another lump in her breast, she spoke with the defendant, who again told her not to worry. Later that year after a second mammogram, plaintiffs decedent learned that she had breast cancer. The plaintiffs decedent was aware that she had cancer no CT Page 4052 later than May 1, 1980. However, until April, 1982, she thought that this finding of cancer was a new growth, unrelated to her previously discovered lumps. Suit was filed June 11, 1982. The defendants motion for summary judgment based on the statute of limitations was granted by the trial court. The Supreme Court reversed, holding that until the plaintiffs decedent had suffered actionable harm, the statute of limitations had not started to run. Actionable harm, it stated, requires a breach of a duty; and resulting harm. Id. at 44.
 "Consequently, the plaintiffs decedent did not have an "injury as contemplated by the statute until she discovered or in the exercise of reasonable care should have discovered a causal relationship between the defendants allegedly negligent diagnosis of August, 1979 and subsequent lack of treatment, and the metastasis of her cancer which she discovered on May 1, 1980. Only then did she sustain "actionable harm." (citation omitted). Id.
In Catz the Court held that in order to sustain his burden, the defendant would have to show that there were no issues of material fact regarding when the plaintiff knew or should have known that she sustained "actionable harm." Id.
 "The defendants affidavit and the other documents . . . pinpoint when the defendant examined [plaintiffs decedent] and initially diagnosed her condition and when she became aware that she had cancer. They do not, however, disclose when [plaintiffs decedent] discovered or in the exercise of reasonable care should have discovered that the defendant was negligent . . . and the causal nexus . . . between his alleged negligence and the metastasis of her cancer." Id.
Because the court concluded that there were material issues of fact in dispute about the date of discovery, it overturned the trial courts granting of the defendants Motion for Summary Judgment.
Citing the legislative history of § 52-584 the Catz Court dismissed the defendants argument that the statute of limitation starts to run on the date of the alleged negligent act or omission. "The use by the legislature of the word "injury rather than "act or omission in the initial part of § 52-584 was obviously a deliberate choice . . ."[2] Id. at 46. Previously the legal limitation was triggered on the date of the negligent CT Page 4053 act or omission. Id.
Applying the principles articulated in both Catz and Burns,
it is clear that the defendants position that the statute began to run on the date of the wrongful conduct, is not sustainable. Wrongful conduct or no, the statute does not begin to run until there is some discovery by the plaintiff of his/her injury. Similarly, the plaintiffs position that the statute does not begin to run until the plaintiff has a full and complete understanding of the nature and cause of the injury, is also not supportable. The statute mandates only that the injury be "discovered or [that] in the exercise of reasonable care [it] shouldhave been discovered." (Emphasis added).[3]
 1. The Date the Injury is Sustained
The defendant argues that the injury of the plaintiff could be sustained no later than August 23, 1993 because that is the last date the defendant saw the plaintiff. The date one discovers or should discover is the date the statute begins to run.[4]
There is no dispute that the plaintiff could not have discovered his injury until after this date. Therefore, the statute did not begin to run on August 23, 1993. It is not clear from the record the exact date that the plaintiff sustained the injury of Dexedrine toxicity. It is equally unclear the exact date the plaintiff actually "discovered" his injury. The earliest reference to his condition is in October, 1993, when Dr. Inwood uses the phrase with the plaintiff and with his parents. Therefore, the earliest date the statute of limitations could have begun to run is October, 1993.
 2. The Date the Injury Was or Should Have Been Discovered
The plaintiff urges this court to accept that he could not be held to have discovered his injury until, at the earliest, January 6, 1994,[5] when his condition of Dexedrine toxicity due to an overdose of Dexedrine was definitively diagnosed by Dr. Evans, a physician with the Institute of Living. The defendant urges this court to reject the plaintiffs position and to consider the admission by the plaintiff that Dr. Inwood might have spoken to him about Dexedrine toxicity in October, 1993. The defendant, further, cites testimony of the plaintiffs father attesting to the fact that Dr. Inwood and another doctor discussed with the parents Dexedrine toxicity and its potential causes in October, 1993, to support his position that the plaintiff knew or should CT Page 4054 have known about his injury in October, 1993.
The plaintiff argues that the knowledge of the plaintiff's parents regarding a causal nexus between the Dexedrine and their son's injuries is immaterial because it cannot be "imputed to Mr. Kanaher," an adult. Memorandum of Law in Support of Objection to Defendant's Motion for Summary Judgment, p. 12. This argument misses the point. Not only must this court determine if the facts establish when the plaintiff discovered the causal connection between the defendants conduct and his injuries, but also whether the facts establish when the plaintiff should have discovered the connection. If his parents, who were talking to the same doctor as he was about his conditions, learned of this connections in October, 1993. Then "in the exercise of reasonable care," the plaintiff should have discovered this, too.
The plaintiff wants this court to accept that the day the plaintiff becomes fully aware of the duty owed and the duty breached is the day the plaintiff knows or should know of actionable harm. This position was rejected by the Supreme Court in Burns. In Burns, the court, acknowledging that "the plaintiff may very well be foreclosed from any remedy for what might have been an actionable injury," nevertheless held that something short of full and complete knowledge is sufficient to start the statute of limitations. Burns, supra 192 Conn. 460. The plaintiff emphasizes a subtle distinction between the terms "learned of an injury" and "understood the injury" which does not exist in the law. The former requires an objective review of the facts surrounding the incident. The later relies on a subjective interpretation of the facts as internalized by the patient. Such a subjective approach is inherently unreliable and untenable.
Catz, which the plaintiff cites for support of his advocation of the subjective approach, does not ultimately support him. The factual underpinnings of Catz are distinctly different from those in the instant case, in that the causal connection between the plaintiffs decedents injury and the defendants conduct was not readily discoverable at the time that she learned of her medical condition, metastasized cancer. An objective review of the facts surrounding the incident in Catz, reveal that there was a genuine issue of fact in dispute as to when the plaintiffs decedent learned or should have learned of her injury. The Supreme Court in Catz deemed it reasonable to postulate that though she knew of her metastasized cancer in May, 1990, the facts were not clearly established to securely say that she knew of the causal link CT Page 4055 between her cancer and the defendants acts and/or omissions. The Court further deemed it reasonable to conclude that there was no indication that plaintiff's decedent should have made this discovery in May, 1990.
In the instant case, the date that the plaintiff learned of his condition, Dexedrine toxicity, the cause was readily determinable. The cause was an overdose of Dexedrine. The Dexedrine was from one source, Dr. Berkeley. The cause of the defendants condition was readily discoverable. Whether the plaintiff had actual knowledge or not, the facts indicate that the plaintiff should have discovered the actionable harm in October, 1993.
The plaintiff began to have adverse reactions to the Dexedrine in September, 1993. The reactions were sufficiently severe to cause the plaintiff to call the defendant two times in September, 1993. In October, 1993 he went to see Dr. Inwood who mentioned to him the phrase Dexedrine toxicity." The plaintiff, in his affidavit, stated that: "Dr. Inwood may have advised me in early October, [1993] that my conditions were related to being over-medicated with Dexedrine . . ." Plaintiffs Affidavit, dated July 15, 1998, attached to the Memorandum as Exhibit B. Concurrently, Dr. Inwood discussed this condition with the plaintiffs parents. Therefore, the statute of limitation began to run in October, 1993.
 D. 90 DAY EXTENSION: SECTION 52-190a (b)
The plaintiff filed a petition for a ninety day extension, pursuant to section 52-190a(b) of C.G.S. The defendant argues that because that petition listed the date of expiration of the statute of limitations as August 1, 1995, the plaintiff could not receive an extension past November 1, 1995. In essence, the defense wants this court to treat the date listed on the petition as an admission that the statute of limitations expired on that certain date. This argument fails, as a matter of law. The statutory provision allowing for an extension of the statute of limitations is automatic.
 "When the clerk granted the petition, the clerk automatically extended the statute of limitations for ninety-days beyond the time the plaintiffs cause of action would otherwise have been barred. The clerk had no discretion under the statute. The statutory language is clear. The procedure set forth is mandatory. CT Page 4056 The statute provides that "an automatic ninety-day extension of the statute of limitations shall be granted. . . ." The clerk could not extend the statute of limitations for a period less than ninety-days.
Amati v. Nallainathan, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 92 298653 (November 27, 1995. Thim, J., 1995 Ct. Sup. 13014). Since this court holds that the statute began to run in October, 1993, unless otherwise tolled, it is irrelevant that the plaintiff, in his petition, noted the expiration date of the statute of limitation as August, 1995. Because this court finds that the statute began to run in October, 1993 and because the plaintiff had obtained a 90 day extension of the statute, the statutory period expired in January, 1996, unless there was a tolling of the statute.
 E. TOLLING OF THE STATUTE OF LIMITATIONS
The statute of limitations expired in January, 1996, unless it was tolled. The plaintiff argues that the statute was tolled by the continuing course of conduct doctrine. The defendant maintains that the doctor-patient relationship terminated in August, 1993 and therefore there was no continuing conduct. This court holds that the statute of limitations may have been tolled because of the continuing course of conduct doctrine.
Under certain circumstances, the statute of limitations may be tolled under the continuous treatment or the continuous course of conduct doctrine. Blanchette v. Barrett, 229 Conn. 256, 265
(1994). "Both of these doctrines are well established in the jurisprudence of this state." Id.at 274. Under the continuous treatment doctrine, the statute does not begin to run until the course of treatment giving rise to the injuries is terminated.Id. Under the continuing course of conduct doctrine the statute of limitations is tolled when there is evidence of a breach of duty that remained in existence after the initial or original wrongful conduct. Id. at 275. In such circumstances, there has usually been evidence of either a "special relationship" or of a continuing duty. Id.
If this court finds that there is a dispute as to whether or not the doctor-patient relationship continued past the date when the statute of limitation began to run; or if this court finds that there is a dispute as to whether the duty of the defendant to the plaintiff continued past the date when the statute of CT Page 4057 limitations would have begun to run, then it must conclude that the statute of limitations may have been tolled.
This court finds that circumstances existed in this case to support the application of the continuing course of conduct doctrine. Thus, the statute of limitations would have been tolled until the continuing duty and/or the special relationship ceased to exist. As a basis for this holding the court looks to the following facts. First, in his September 22, 1993 letter, the defendant wrote to the plaintiffs law school, describing his relationship with the plaintiff: "I am writing in behalf of Mr. Kahaner whom I have been treating for Attention Deficit Disorder." The choice of words is significant, in that the defendant is writing about an on-going treatment process, rather than a terminated treatment process. Second, on the cover sheet to a fax of medical records, office personnel in the defendants office wrote that the records were from "9-1-92 to the present." This suggests that the office considered Mr. Kahaner to be a current patient of the defendant. Third, in his deposition the defendant conceded that he continued to have responsibility for the plaintiff after August, 1993. In response to the following questions, the defendant provided these answers.
 Q. So to the extent that you were the physician that had prescribed the medication, you were responsible for medically supervising its use by the patient you prescribed it for, isnt that true, Doctor?
A. In a reasonable way under the circumstances, correct.[6]
 Q. Did you or did you not have a responsibility of some level to Rick Kahaner after August 23, 1993, yes or no?
A. I had a responsibility.[7]
Fourth, on March 5, 1994, the defendant prepared an analysis of the Millon Clinical Multiaxial Inventory II test which was completed by the plaintiff, and concluded with the words "will keep in mind as treatment proceeds."[8] Finally, the medical records of the defendant do not indicate that the physician-patient relationship had terminated. There is no indication of a "final" or "termination" discussion with the plaintiff. Given the fact that the defendant had prescribed an increase in the dosage of Dexedrine at this last office visit, the lack of a notation of termination is significant. CT Page 4058
The defendant vigorously challenges the use of these facts as support for the application of the continuing course of conduct doctrine. It is true that each of these facts, on their own, would probably be insufficient to raise a dispute as to whether or not the physician-patient relationship continued past August 23, 1993. Together, however, the facts put the issue of the date of the termination of the special relationship, and therefore the date of the termination of duty, in dispute. There is no indication of the date the continuing responsibility or the continuing duty terminated, but definitive dates are not necessary when deciding a motion for summary judgment. It is sufficient that there are material facts in dispute as to whether it continued beyond October, 1993.
Because this is a Motion for Summary Judgment, it is not for this court to find the facts, but only to ascertain whether or not there are factual disputes to resolve. In the instant case there are issues of material facts in dispute as to what date the doctor/patient relationship ended. Thus, there is an issue in dispute as to how long the duty of the defendant to the plaintiff continued. Therefore, the defendants Motion for Summary Judgment is denied.
 CONCLUSION
The undisputed facts in this case support a conclusion that under the applicable statute of limitations the plaintiff knew or should of known that he had suffered and injury, an actionable harm, no later than October, 1993. However, because there are disputes as to material facts regarding whether or not the defendant engaged in conduct which could be considered a continuing course of conduct, the statute of limitations may have been tolled until as late as post-March, 1994. The plaintiff brought his lawsuit in March, 1996. Therefore, the defendant's Motion for Summary Judgment is denied.
ANGELA CAROL ROBINSON JUDGE, SUPERIOR COURT