[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT OF ERNST YOUNG LLP
Defendant Ernst Young LLP, an accounting firm that has been sued by the plaintiffs in the above-captioned case for its role in the financial disclosures of a continuing care facility known as East Hill Woods, has moved for summary judgment on the claims of the first seven plaintiffs whose claims have been scheduled for trial: Ruth Dudrow, Robert Bachrach, Sylvia Rosh, Tatiana Pollock, Thomas Morley as representative of Marion Morley, Eugene F. Cederbaum, executor of the estate of Zelda Cederbaum, and Dora Massoff. While the movant seeks to style these plaintiffs as "representatives", this is not a class action, and following ruling concerns only the seven claimants to whose claims the motion for summary judgment is directed.
In a 331-page, 157-count Amended Revised Complaint, the seven plaintiffs have made multiple claims against defendant Ernst Young. Each of the seven plaintiffs, whose claims are challenged by this motion for summary judgment alleges that he or she or the person whose estate he or she represents, executed a continuing care contract with East Hill Woods on the basis of disclosure statements and financial information prepared in whole or in part by Ernst Young, paying entrance fees ranging from $67,000 to $315,500. These plaintiffs allege that Ernst 
Young prepared the financial disclosure statements that they had a right to receive before moving in, that these disclosure CT Page 12852 statements were faulty in various ways, that they lost their ability to receive refunds of their deposits, that East Hill Woods filed a Chapter 11 bankruptcy petition in March 1997, and that Ernst Young is liable to them for damages for the actual or anticipated loss of their entrance fees.
These plaintiffs allege that Ernst Young was the accountant, consultant and actuary for East Hill Woods between 1989 and 1996. The motion is directed to the following counts of the complaint:
 Counts 15-24 (Aiding and abetting violation of C.G.S. §§ 17b-520-535)
Counts 36-37 (Misrepresentation)
 Counts 53-57 (Breach of contract — plaintiffs as third party beneficiaries)
Counts 59-63 (Negligence)
Counts 67-70, 73-74, 77-78, 81-82 (Negligent nondisclosure)
 Counts 71-72, 75-76, 79-80, 83-84 (Negligent misrepresentation)
 Counts 87-88, 90, 92, 94 (Aiding and abetting fraudulent nondisclosure)
 Counts 89, 91, 93, 95 (Aiding and abetting misrepresentation)
 Counts 97-101 (Aiding and abetting breach of fiduciary duty)
Counts 104-105, 107, 109, 111 (Negligent nondisclosure)
 Counts 106, 108, 110, 112 (Aiding and abetting negligent misrepresentation)
 Counts 120-124 (Violation of Connecticut Unfair Trade Practice Act)
Ernst Young challenges the claims in all counts listed CT Page 12853 above on the ground that the applicable statutes of limitation expired before these plaintiffs brought suit on January 1, 1998.
It challenges the claims made in counts 53-57 on the ground that the undisputed facts do not establish that the seven plaintiffs were third party beneficiaries of any contract between Ernst Young and East Hill Woods.
It challenges Counts 120-124 on the ground that performance of professional accounting services does not state a claim under CUTPA.
It challenges the various claims of aiding and abetting on the ground that the facts do not establish scienter and that they do not establish that the plaintiffs relied on any of the information claimed to have been faulty; and it claims that the facts do not support a conclusion of legal causation between its alleged acts and the damages claimed by the seven plaintiffs.
Standard of Review
"Summary judgment shall rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 384 (now § 17-49). Rivera v. Double A Transportation, Inc.,248 Conn. 21, 24 (1999); Peerless Ins. Co. v. Gonzalez,241 Conn. 476, 481, 697 A.2d 71 (1997). (Internal quotation marks omitted.) Nichols v. Lighthouse Restaurant, Inc., 246 Conn. 156,163, 716 A.2d 71 (1998)." Alvarez v. New Haven Register, Inc.,249 Conn. 709, 714 (1999).
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Rivera v. DoubleA. Transportation, Inc., supra, 248 Conn. 24.
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Connell v. Colwell,214 Conn. 242, 246-47 (1990). In Connecticut, a directed CT Page 12854 verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 380 (1969); Vuono v. Eldred,155 Conn. 704, 705 (1967).
In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski,206 Conn. 495, 500 (1998); Telesco v Telesco, 187 Conn. 715, 718
(1982).
I. Statute of Limitations
The gravamen of all of the seven plaintiffs' claims is that they paid entrance fees and executed contracts for housing and services at East Hill Woods at least in part because financial disclosures prepared in part by Ernst Young made it appear that East Hill Woods was financially secure. The plaintiffs commenced this action on January 7, 1998. They allege in their complaint that they signed their continuing care contracts, committing their entrance fees, on the following dates:
 Ruth Dudrow June 14, 1991 Robert Bachrach September 17, 1990 Sylvia Rosh May 21, 1991 Tatiana Pollock February 25, 1992 Marion Morley June 17, 1993 Zelda Cederbaum December 3, 1993 Dora Massoff March 21, 1995
Ernst Young acknowledges in its brief, at page 10, that plaintiffs Rosh, Pollock, Morley, Cederbaum and Massoff each received directly or through a representative a disclosure statement dated either February 1991, July 1992, July 1993, or October 1994, that included financial statements audited by Ernst Young. Plaintiffs Bachrach and Dudrow each either received a June 1988 disclosure statement that predated Ernst 
Young's work for East Hill Woods or did not receive a disclosure statement at all before executing a contract.
The claims of all of the plaintiffs concern work performed by Ernst Young more than three years before suit was instituted on January 7, 1998. Their claims are barred unless 1) a CT Page 12855 longer period of limitation applies to some of their claims or 2) a tolling doctrine applies.
A. Limitation period for claims of aiding and abettingviolation of C.G.S. § 17b
In counts 15-24, the seven plaintiffs allege that Ernst 
Young aided and abetted violations by East Hill Woods of the Continuing Care Act, C.G.S. §§ 17b-520-535. This court has previously ruled that Ernst Young does not have statutory liability under that statute, and the claims of aiding and abetting survive only as common law claims for tortious conduct. As such, they are subject to the statute of limitations applicable to common law torts (three years from the date of the act or omission complained of, pursuant to C.G.S. § 52-577), not the six year period provided at C.G.S. § 17b-529 as to statutory violations. The plaintiffs claim that it is incongruous for a different limitation period to apply to those outside the statutory liability imposed by the Continuing Care Act than to those within it. While that perceived incongruity could have been avoided by the legislature had it extended statutory liability more broadly in the wording of the Act, the court cannot ignore the limits of the scope of statutory liability. Since the aiding and abetting claims allege common law torts, not statutory causes of action, they are subject to the three year limitation period set forth in C.G.S. § 52-577.
The plaintiffs' reference to this court's ruling on the statutory liability of the CRSA defendants is unavailing, since they arguably came within the scope of the Continuing Care Act as persons who entered into contracts "as or on behalf of a provider".
B. Tolling doctrines
The seven plaintiffs have pleaded in avoidance of Ernst 
Young's statute of limitations defense that the limitation period is tolled by either or both of two doctrines: 1) that the tortious conduct in connection with the financial information made available to the plaintiffs when each executed his or her contract was part of a continuing course of conduct that included later wrongful conduct toward the plaintiffs, and 2) that Ernst Young or persons in privity with Ernst Young fraudulently concealed the facts for the purpose of obtaining delay in the plaintiffs' filing a complaint. CT Page 12856
The issue is whether it has been demonstrated what the facts are with respect to these issues and whether, under these facts, defendant Ernst Young is entitled to judgment as a matter of law on its defense of expiration of the statute of limitations.
1. Continuing Course of Conduct
The Connecticut Supreme Court has ruled that
 [T]o support a finding of `continuing course of conduct' that may toll the statute of limitations, there must be evidence of the breach of a duty that remained in existence after commission of the wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong . . . where we have upheld a finding that a duty continued to exist after the cessation of the `act or omission' relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.
Blanchette v. Barrett, 229 Conn. 256, 275 (1994).
Ernst Young claims that each service performed for East Hill Woods was discrete and separate, suggesting that there are separate engagement letters limiting the scope of each audit or other task performed. While Ernst Young refers at page 31 of its 6/3/99 brief to two engagement letters, ("see, e.g., Plaintiff's Ex. 98"), it has not identified specific letters of engagement containing such limitations for all services performed but merely states conclusorily that each assignment should be regarded as discrete. The plaintiff has demonstrated that on some occasions Ernst Young was engaged to perform services related to prior audits and disclosures (Pf's Brief pp. 15-16). This court lacks any basis to conclude that the tasks Ernst Young performed after preparation of the contested disclosure statements did not "relate" to those statements. Since the movant has the burden of showing what the facts are, and that the facts entitle it to judgment, the court cannot simply accept conclusory generalizations concerning the nature of the terms upon which Ernst Young performed later services and surmise that those services were unrelated to the services claimed to be actionable. The movant has failed to show that CT Page 12857 the undisputed facts establish that it should prevail on its statute of limitation defense.
2. Tolling for concealment of cause of action
Because this court has found that the facts do not establish the inapplicability of the tolling doctrine discussed above, it is not necessary to determine whether this additional tolling doctrine is likewise available to the plaintiffs.
3. Cessation of tolling
Ernst Young asserts that even if both tolling doctrines claimed have not been shown to be inapplicable, tolling stopped when the seven plaintiffs learned of their cause of action.D'Occhio v. Connecticut Real Estate Commission, 189 Conn. 162,182-83 (1983).
Ernst Young argues that knowledge of the claims upon which the seven plaintiffs base their claims was "readily available by no later than 1994" and that the plaintiffs may not avail themselves of tolling doctrines because they knew of their cause of action by virtue of the reissued 1993 audited financial statements of East Hill Woods, which Ernst Young asserts "were available to residents by the end of 1994" and which showed an annual operating loss of almost $4 million. The facts necessary to alert the seven plaintiffs as to the existence of a cause of action were not, however, facts concerning the financial condition of East Hill Woods for accounting periods after these plaintiffs signed their contracts, but whether Ernst Young's work used in the disclosures made to them before they signed those contracts contained errors, omissions or misleading information based on the facts at the time of their preparation.
Receipt of information that a projected level of occupancy or income has not been realized does not constitute notice that the projection was faulty, fraudulent or negligent at the time it was made. Ernst Young has proffered no facts to establish that any of the seven plaintiffs had information concerning the quality of Ernst Young's work as reflected in the financial disclosures on which they allegedly relied in deciding to enter into contracts with East Hill Woods.
The movant notably does not assert that East Hill Woods or any of its representatives told any of the seven plaintiffs that CT Page 12858 it regarded Ernst Young as having provided erroneous information or analyses in the past or indeed to have related in any way the unfavorable financial situation that developed to any prior work performed by Ernst Young.
When reality fails to live up to a projection, the inference to be made is not limited to a conclusion of malfeasance or negligence in formulating the projection: other logical inferences might include mismanagement or unfavorable developments in market conditions. The movant, however, asks the court to make an inference on the papers that the seven plaintiffs knew of their cause of action against it by late 1994. Such an inference is the province of the trier of fact at trial, and the inference favored by the movant is by no means the only logical inference to be made from the receipt of reports of bad financial results at a later date.
Ernst Young has failed to establish, pursuant to the standards for summary judgment, that the seven plaintiffs knew of their cause of action and failed to file suit within three years of that knowledge.
II. Lack of Third Party Beneficiary Status
In its motion, Ernst Young states that after this court struck claims against it based on third party beneficiary status, plaintiffs repleaded those claims in counts 53-57. In fact, those counts of the amended revised complaint filed on July 22, 1999, do not list Ernst Young in these counts.
III. CUTPA Claims
Ernst Young takes the position that as a matter of law it cannot be liable to the seven plaintiffs for a violation of the Connecticut Unfair Trade Practices Act because the acts alleged to give rise to those plaintiffs' cause of action do not concern their business practices but the quality of their professional services.
The Connecticut Supreme Court has ruled that mere negligence in the provision of professional services by doctors and lawyers does not give rise to a cause of action under CUTPA.Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 34 (1997);Beverly Hills Concepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, 247 Conn. 48, 79 (1998). While the Court appears to CT Page 12859 have decided that negligent departures from the standard of care of certain professionals does not constitute an unfair trade practice, it has firmly noted that other activities of professionals may. In Beverly Hills Concepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, supra, 247 Conn. at 75, the Court stated that the "entrepreneurial aspects" of a professional practice are covered by CUTPA. See also Ivey, Barnum O'Marav. Indian Harbor Properties Inc., 190 Conn. 528 (1983) (business practices of law firm actionable under CUTPA).
The Connecticut Supreme Court has not had occasion to decide whether intentional misconduct in aid of a client's business transaction is actionable under CUTPA. While such conduct of course may also be a departure from the standard of care, it is difficult to see why intentional misconduct would not be held to constitute an entrepreneurial trade practice since it would constitute a stark departure from the standards understood to be embodied in the work of professional services, that is, a commitment to adhere to standards instituted for conduct within the professions. It does not seem logical, for example, that use of a professional role to commit a fraud would not be actionable under CUTPA, since such a perversion of professional standards would be such a departure as to render the activities merely entrepreneurial practice rather than professional performance.
The plaintiffs do not attempt to defend their claims of negligence against Ernst Young as giving rise to CUTPA claims, rather, they limit their argument to the point that their allegations of aiding and abetting fraudulent nondisclosures (counts 57, 88, 90, 92 and 94) would support a CUTPA claim.
This court concludes that the movant has failed to demonstrate that it is entitled to judgment on the CUTPA claims, since the plaintiffs allege that they engaged in intentional departures from standards of professional performance.
IV. Lack of Reliance
Ernst Young asserts that the undisputed facts show that plaintiffs Dudrow, Bachrach, Rosh, Pollock and Morley did not rely on any financial information prepared by it for East Hill Woods and therefore have no basis for their claims of aiding and abetting a violation of C.G.S. § 17b-520-535, negligence, negligent nondisclosure, or negligent misrepresentation. These CT Page 12860 plaintiffs acknowledge that reliance is a necessary element of their cause of action since they can hardly claim to have been injured by representations on financial reports that they did not know about or they did not play a part in their decision to enter into continuing care contracts.
With regard to plaintiffs Bachrach, Rosh, Pollock, and Morley, the facts concerning reliance are disputed. The movant relies on portions of the depositions of these plaintiffs, who direct the court to contrary assertions in their affidavits. A court deciding a motion for summary judgment may not resolve issues of credibility to determine the material fact whether they did or did not rely on the work of Ernst Young. Nolan v.Borkowski, supra, 206 Conn. 500. The trier of fact could determine that the affidavit is the credible statement if the plaintiff offers the same statement at trial and may or may not find that contrary testimony at a deposition undermines the statement in court.
The motion for summary judgment with regard to plaintiff Ruth Dudrow presents a different situation. At her deposition, this plaintiff indicated that she received a disclosure statement dated June 1988, a date that preceded any involvement by Ernst Young in the East Hill Woods project.
Plaintiff Dudrow has stated in various discovery responses that she received no disclosure statement before signing a contract that obligated her to pay an entrance fee, and alternately that she received the 1988 documents that predated Ernst Young's involvement. She has also stated that only after she had obligated herself in a contract did she see disclosure statements that included the work of Ernst Young. In her brief in opposition to Ernst Young's motion for summary judgment, Mrs. Dudrow acknowledges that she "cannot establish direct reliance on Ernst Young misrepresentation prior to her entry into East Hill Woods." (Plaintiff's Brief in Opposition To Motion for Summary Judgment of Ernst Young, 7/20/99 at p. 51). In her affidavit dated July 19, 1999, she does not aver any inspection of any work of Ernst Young or even any mention of that firm's work as playing any role in her decision to sign a residence agreement. She takes the position that she "indirectly" relied on work of Ernst Young. She notes that the Restatement of Torts (Second) at sections 531 and 533 recognizes liability of one who makes a fraudulent
misrepresentation to persons to whom the maker has reason to CT Page 12861 expect that the statement will be communicated. Mrs. Dudrow has not, however, alleged that Ernst Young engaged in fraudulent misrepresentation, and the Restatement does not support a conclusion that negligence or acts aiding another party who makes a disclosure similarly are actionable if one merely relies on another person's reliance or report of a statement.
What Mrs. Dudrow states that she relied on was her belief "that the State of Connecticut would not permit a facility such as East Hill Woods to operate if it was at serious financial risk without making certain that residents and prospective residents were aware of this risk." (Plaintiff's Brief, 7/20/99, p. 51, Dudrow Aff. #10).
Mrs. Dudrow argues that if others relied on work of Ernst Young in executing contracts, she too relied on this work. This formulation strains even the Restatement principles applicable to fraudulent misrepresentations. Mrs. Dudrow has not alleged that any participation by Ernst Young or any work by Ernst Young was ever communicated to her before she signed her contract in 1991. The Restatement section on which Mrs. Dudrow relies requires reliance on the fraudulent misrepresentation made to a third party and the communication of that interest from the third person to the plaintiff. Accord, Wright Fitzgerald, Connecticut Law of Torts, § 135; Jacques v. Roy,144 Conn. 737 (1956). Mrs. Dudrow seeks to establish reliance instead on the lack of warnings from the review authority and from the conduct of other people in moving in, without regard to whether the work of Ernst Young played any role in their decision. Her formulation appears to be that if anyone else moved into the facility, even if Ernst Young's work was not relied on by them or mentioned to her, she establishes reliance because she observed that others had moved in. She does not maintain that any regulatory agency communicated to her any statement of Ernst Young.
Section 533 of the Restatement requires that the claimant, even though he or she has not received the fraudulent misrepresentation directly "acts in justifiable reliance upon it." "It" refers clearly to the fraudulent misrepresentation, not to the conduct of the persons to whom the statement was directly communicated.
Mrs. Dudrow cites no case in which any Connecticut court has found that the requirement of reliance is met by a plaintiff CT Page 12862 who has not even seen or been told of the alleged misrepresentation in entering into the transaction at issue. Rather, a plaintiff's right to recover for misrepresentation depends on a showing of "justifiable reliance upon the information" supplied by the defendant. Williams Ford, Inc. v.Hartford Courant Co., 232 Conn. 559, 575 (1995) quoting Restatement (Second) of Torts § 552.
The facts are undisputed that Mrs. Dudrow did not receive any disclosure or statements prepared by Ernst Young before she obligated herself to a contract with East Hill Woods, and she makes no claim that the substance of any statement by Ernst Young was ever communicated to her by anyone before she entered into the obligation.
Reliance is a required element of the causes of action Mrs. Dudrow alleges against Ernst Young based on misrepresentation. The movant lists these counts in the table attached to its motion as Counts 17, 60, 69-70, 88, 98 and 105. That table and the text of the movant's brief indicate that this ground is not asserted as to Mrs. Dudrow's CUTPA claim.
Under the undisputed facts, the movant has met the standard for summary judgment as to this plaintiff on her claims.
Aiding and Abetting
The movant seeks summary judgment on the remaining six plaintiffs' claims for aiding and abetting statutory violations and other misconduct by East Hill Woods on the ground that there is no direct evidence of scienter or intent to aid a violation. In Suarez v. Dickmont Plastics Corp. , 229 Conn. 99, 111 (1994), the Connecticut Supreme Court reversed a trial court with the statement the "summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." The movant fruitlessly urges this Court to ignore this statement, relying on Superior Court cases decided before Suarez or on Appellate Court cases in which the clear facts defeated claims of intent. The movant acknowledges that in an audit it opined on an absence of regulatory criticism a month after East Hill Woods had received such criticism, but asks the Court to conclude that it did not know of the communication. The trier of fact could potentially make a contrary inference based on the movant's degree of involvement with the CT Page 12863 records and with the management personnel of East Hill Woods.
Legal Causation
The movants ask the Court to conclude, as a matter of law, that the seven vanguard plaintiffs cannot prove that any misconduct or omission by Ernst Young was a legal cause of their losses. The movant argues that losses were caused by market forces or the bankruptcy of East Hill Woods.
A proximate or legal cause is one that is a substantial fact in bringing about a result. Wright Fitzgerald, Connecticut Law of Torts, § 32. Reliance on misleading financial information in entering into a contract could fairly be held to be a substantial fact in causing damages if the entity with whom the contract was entered proceeds into financial failure.
The CUTPA claim of Mrs. Dudrow, however, rests on the proposition that unfair trade practices of Ernst Young in connection with financial disclosures caused her injury. Since, as has been explained above, the undisputed facts show that Ernst Young did not prepare the 1988 disclosure documents and since she did not rely on any work or representation of theirs, there cannot logically be a causal relationship between her damages and the alleged misconduct of this defendant. Summary judgment is warranted on Mrs. Dudrow's CUTPA claim.
Conclusion
The motion for summary judgment of Ernst Young is granted as to all claims of Ruth Dudrow. It is denied as to the claims of Robert Bachrach, Sylvia Rosh, Tatiana Pollock, Marion Morley, Eugene F. Cederbaum, executor of the estate of Zelda Cederbaum, and Dora Massoff.
BEVERLY J. HODGSON Judge of the Superior Court