GEORGE L. ROSADO ET AL. *v.* BRIDGEPORT ROMAN
CATHOLIC DIOCESAN CORPORATION ET AL.
(AC 18669)

Mihalakos, Zarella and Dupont, Js.

Argued April 24—officially released October 3, 2000

*Mark R. Kravitz,* with whom were *Eileen R. Becker*
and, on the brief, *Suzanne E. Wachsstock,* for the appel-
lants (proposed intervenors John Doe et al.).

*William F. Gallagher*, with whom were *Cindy L. Robinson* and, on the brief, *Barbara L. Cox* and *Frank A. Bailey*, for the appellees (plaintiffs).

*Opinion*

DUPONT, J. This is an appeal from the denial of the motion of seven priests to intervene in an action brought by the plaintiffs against the Bridgeport Roman Catholic Diocesan Corporation (Diocese) and others for damages for alleged sexual abuse by a particular priest when he was assigned to various churches within the Diocese.[1] The seven priests seek to intervene as of right or permissively for the limited purpose of arguing motions to quash, for a protective order and to prevent disclosure of private, confidential material contained in their personnel records.[2] The disclosure that the seven priests[3] seek to protect relates to information about them contained in records in the possession of the defendants about "all complaints, accusations, allegations, reports and rumors concerning sexual misconduct, sexual abuse, sexual assault, inappropriate touching, inappropriate fondling, sexual overtures or any sexual impropriety or alleged impropriety. . . ." The information was sought by subpoena, interrogatory and production requests directed to the Diocese.

---

[1] The motion to intervene was denied by the trial court, *Skolnick, J.* A motion of the plaintiffs to dismiss this appeal for lack of an appealable final judgment was denied by this court on January 13, 1999.

[2] The personnel records were previously ruled to be personnel files for the purpose of General Statutes § 31-128f by another trial judge, *Levin, J.* Section 31-128f provides in relevant part: "No individually identifiable information contained in the personnel file . . . of any employee shall be disclosed by an employer . . . without the written authorization of such employee except . . . (2) pursuant to a lawfully issued administrative summons or judicial order, including a search warrant or subpoena . . . or the investigation or defense of personnel-related complaints against the employer . . . ."

[3] The proposed intervenors were granted permission to use the fictitious names of Reverend John Doe 1 through 7.

The issue is whether the seven priests should be allowed to intervene to protest the production of the records on the alleged grounds that the records are protected from disclosure by the United States constitution, the constitution of Connecticut, Connecticut statutes and the common law.[4] The plaintiffs and the seven priests present compelling arguments for their different answers to this question.

The court denied the motion of the seven priests because "[i]t is not necessary for the movants to intervene, thereby becoming parties in the underlying action, in order to obtain the relief they seek. As nonparty persons to be deposed, they may be entitled to this relief under . . . Practice Book § 13-27 and Practice Book . . . § 13-28." Although it denied the motion, the court stated that it would "afford counsel a full hearing on the substantive issues" raised in the motions. A motion to quash was subsequently denied, but a motion to reargue that denial is still pending. The court also obtained the personnel files for review in camera, but has not yet reviewed them or decided what information, if any, should be disclosed to the plaintiffs. The court decided that it would take no action as to these matters while this appeal is pending. In addition, pursuant to a motion for review filed in this court, the plaintiffs are precluded from questioning the former bishop of Bridgeport about the seven priests. In other words, all discovery involving the seven priests has been stayed until this appeal has been decided.

---

[4] Whether the records are in fact subject to disclosure is not the question of this appeal. Our question is whether, based on the allegation that the appellants do have an interest in part or in all of the records that would protect the records from disclosure, they should be allowed to intervene either as of right or permissively. The granting of the motion to intervene is not a determination of whether any material should be produced in part, in toto or not at all. See *Washington Trust Co.* v. *Smith*, 241 Conn. 734, 746, 699 A.2d 73 (1997); *Hennessey* v. *Bristol Hospital*, 225 Conn. 700, 704, 626 A.2d 702 (1993); see also *Northern States Power Co.* v. *Westinghouse Electric Corp.*, 156 F.R.D. 168, 172 (D. Minn. 1994).

The stated purpose of the discovery requests was to determine whether or when the Diocese knew or should have known that some priests within the Diocese were engaging in improper sexual behavior. The amended complaint contains thirteen counts and seeks damages by twelve plaintiffs who allege that they were sexually harmed by one particular priest when they were minors. The amended complaint alleges negligent supervision of that priest and other priests by a bishop, a monsignor and the Diocese, and alleges harm arising from their failure to supervise the priests in the Diocese in a proper manner when they knew that priests within the Diocese were sexually abusing children.

The plaintiffs' principal argument is that the word "judgment" in Practice Book § 9-18[5] should be read strictly to allow intervention only if a movant for intervention has an interest or title that the final judgment, as between the original litigants, will affect. The seven priests argue that Practice Book § 9-18 should not be read literally and that intervention should be allowed when there is a direct interest of a person at stake, not necessarily an interest in the final judgment to be

[5] Practice Book § 9-18 is modeled after General Statutes § 52-107. Section 9-18 provides: "The judicial authority may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the judicial authority may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the judicial authority, on its motion, shall direct that person to be made a party."

General Statutes § 52-107 provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

Practice Book § 99, now § 9-18, used the word "his" and not "its" in the second sentence of the rule as it is now printed. Notably, § 52-107 uses the word "his" in the second sentence of the statute.

rendered in the case. The seven priests rely on rule 24 of the Federal Rules of Civil Procedure[6] for their argument that they should have been allowed to intervene as of right or, at the very least, permissively.

Connecticut procedure has not always clearly defined the distinction between permissive intervention and intervention as of right; *Horton* v. *Meskill*, 187 Conn. 187, 191–92, 445 A.2d 579 (1982); although rule 24 (a) and (b) of the Federal Rules of Civil Procedure has delineated the distinction. Practice Book § 9-18, formerly § 99, applies to intervention as of right, but the nature of that right has not always been fully articulated. "Where state precedent is lacking, it is appropriate to

---

[6] Rule 24 of the Federal Rules of Civil Procedure provides: "(a) Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(c) Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of the United States gives a right to intervene. When the constitutionality of an act of Congress affecting the public interest is drawn in question in any action in which the United States or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of the United States as provided in Title 28, U.S.C. § 2403. . . ."

look to authorities under the comparable federal rule, in this case Rule 24 of the Federal Rules of Civil Procedure." *Horton* v. *Meskill,* supra, 192; see *Washington Trust Co.* v. *Smith,* 241 Conn. 734, 746, 699 A.2d 73 (1997).

The plaintiffs take the position that Practice Book § 9-18, if its exact wording is followed, would prohibit intervention as of right because it provides that an intervenor must have an "interest or title which the judgment will affect . . . ." Because the eventual judgment in this case can directly affect only the plaintiffs and the defendants, the plaintiffs argue that the seven priests cannot intervene as of right. The seven priests contend that the word "judgment" should be more liberally construed as including those interlocutory decisions that are appealable as final judgments and that rule 24 is analogous to Practice Book § 9-18, with Connecticut cases approving the rule's use when Connecticut cases on point are lacking. We agree with the seven priests and conclude that General Statutes § 52-107, as tempered by rule 24 of the Federal Rules of Civil Procedure, is operative here.[7]

The precise issue to be resolved is whether intervention as of right to join a case in order to prevent an interlocutory discovery or production of documents that would directly affect a would-be intervenor exists when the final judgment in the case, resolving the dispute as between the primary litigants, would not affect the intervenor. This exact question has not been considered by an appellate court of Connecticut, although it has been considered and decided by at least one supe-

---

[7] Practice Book § 9-18 "is virtually identical to C.G.S.A. § 52-107, which has been in existence since it was adopted as § 15 of the 1879 Practice Act. The recent tendency of the Supreme Court is to ignore the specific embarrassing language of these sections and follow the most analogous Federal Rule." W. Horton & K. Knox, 1 Connecticut Practice Series: Practice Book Annotated (4th Ed. 1998) § 9-18, comments, p. 310.

rior court, and frequently decided by federal district and federal circuit courts. Closely related questions have also been considered by Connecticut appellate courts.

*Washington Trust Co.* and other Connecticut appellate cases have often relied on rule 24 of the Federal Rules of Civil Procedure and have spoken approvingly of the rule. See *Milford* v. *Local 1566*, 200 Conn. 91, 94, 510 A.2d 177 (1986); *Horton* v. *Meskill*, supra, 187 Conn. 192; *State Board of Education* v. *Waterbury*, 21 Conn. App. 67, 72, 571 A.2d 148 (1990).

Cases involving rule 24 (a) establish four requirements that an intervenor must show to obtain intervention as of right. The motion to intervene must be timely, the movant must have a direct and substantial interest in the subject matter of the litigation, the movant's interest must be impaired by disposition of the litigation without the movant's involvement and the movant's interest must not be represented adequately by any party to the litigation. *Washington Trust Co.* v. *Smith*, 42 Conn. App. 330, 336–37, 680 A.2d 988 (1996), rev'd on other grounds, 241 Conn. 734, 699 A.2d 73 (1997); see also *Edwards* v. *Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (en banc).

Before beginning our analysis of the four prongs of rule 24 (a), we discuss some general principles applicable to intervention as of right.[8] If a would-be intervenor has a colorable claim to intervene as of right, the denial of the motion to intervene is appealable and is treated as a final judgment for purposes of an appeal. *Winslow* v. *Lewis-Shepard, Inc.*, 216 Conn. 533, 536, 582 A.2d 1174 (1990); *Ricard* v. *Stanadyne, Inc.*, 181 Conn. 321,

---

[8] Rule 24 (a) was amended in 1966 to make it clear that an intervenor does not need to show that he will be bound by the disposition of the action and to liberalize the prerequisites to intervention. *Edwards* v. *Houston*, supra, 78 F.3d 1004–1005.

322 n.1, 435 A.2d 352 (1980); *AIU Ins. Co.* v. *Brown*, 42 Conn. App. 363, 367, 679 A.2d 983 (1996); *Common Condominium Assns., Inc.* v. *Common Associates*, 5 Conn. App. 288, 291, 497 A.2d 780 (1985); see also *Horton* v. *Meskill*, supra, 187 Conn. 191–96.

In the present case, this court, prior to argument, determined that the seven priests had a colorable claim to intervene as of right. This court, therefore, denied the plaintiffs' motion to dismiss the appeal from that denial. The fact that a colorable claim exists does not ensure that upon a full scale, plenary review, it will be determined that the motion to intervene as of right should have been granted by the trial court. See *Common Condominium Assns., Inc.* v. *Common Associates*, supra, 5 Conn. App. 291. It does, however, lend support to the argument that Practice Book § 9-18 and General Statutes § 52-107, in providing that a person with an interest that the "judgment" will affect, intended to include an appealable interlocutory judgment in the word "judgment," not only the "end of the line judgment" disposing of the entire case.

If an interlocutory decision so concludes the rights of a party or a person as described in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), there has been an appealable judgment. *McClendon* v. *Soos*, 18 Conn. App. 614, 616, 559 A.2d 1163, cert. denied, 212 Conn. 808, 563 A.2d 1356 (1989). Our Supreme Court held in *King* v. *Sultar*, 253 Conn. 429, 435–36, 754 A.2d 782 (2000), that the denial of a motion to intervene filed by a person with a colorable claim to intervention as a matter of right is a final judgment for purposes of appeal and that the proposed intervenor is a "party" for purposes of General Statutes § 52-263. In the present case, the seven priests did establish a colorable claim to intervention as of right. If denied intervention and denied an appeal, any of their rights to object to the

disclosure of records about them would have been terminated.

In both federal and Connecticut decisions, in reviewing the denial of a motion to intervene, the pleadings are accepted as correct, and the interest of an intervenor does not have to be proved by testimony or evidence. *Washington Trust Co.* v. *Smith*, supra, 241 Conn. 746–47; see also *United States* v. *American Telephone & Telegraph Co.*, 642 F.2d 1285, 1291 (D.C. Cir. 1980). The right to intervene is based on the allegations of the would-be intervenor, without regard to their actual validity. *Nizzardo* v. *State Traffic Commission*, 55 Conn. App. 679, 685, 739 A.2d 744 (1999), cert. granted on other grounds, 252 Conn. 943, 747 A.2d 520 (2000). Further, the rules for intervention should be construed liberally to avoid multiplicity of suits. *Washington Trust Co.* v. *Smith*, supra, 747. The denial of a motion to intervene as of right raises a question of law and warrants plenary review, whereas a denial for permissive intervention is reviewed with an abuse of discretion standard. See *Edwards* v. *Houston*, supra, 78 F.3d 1000.

It is instructive to review Connecticut cases about intervention with particular emphasis on the facts. In *State* v. *Figueroa*, 22 Conn. App. 73, 75, 576 A.2d 553, cert. denied, 215 Conn. 814, 576 A.2d 544 (1990), the trial court granted the Hartford Courant's motion to intervene[9] and then granted its motion to vacate the court's order to seal the file. An appeal was taken from that order and from the granting of the motion to intervene. The appeal from the granting of intervention was withdrawn and was not considered because the court concluded that it had no jurisdiction to hear the appeal at all. Thus, the Appellate Court did not review the granting of the motion to intervene.

---

[9] It is not clear whether the motion to intervene was sought permissively or as of right.

A successful bidder at a foreclosure sale was allowed to intervene as of right in a foreclosure action approving the committee's sale of the foreclosed property. *New Milford Savings Bank* v. *Mulville*, 56 Conn. App. 521, 524, 744 A.2d 447 (2000). Various towns and boards of education had no right to intervene in an action to test the constitutionality of statutory provisions relating to the financing of secondary schools. *Horton* v. *Meskill*, supra, 187 Conn. 198. In that case, timeliness was in question, the would-be intervenors had a limited interest in the litigation, the intervention would cause a delay in the proceedings, and numerous parties, town, cities, boards of education and amici were in the case already, representing the same spectrum of interests. Id. A lessee of property being foreclosed and a successor in interest to the mortgagee can intervene as of right to protect their right of redemption in proceedings to confirm a foreclosure sale. *Washington Trust Co.* v. *Smith*, supra, 241 Conn. 748. Parents and a parent teachers organization were allowed to intervene in a mandamus action brought by the state board of education and the commissioner of education against the city of Waterbury to eliminate school racial imbalance. *State Board of Education* v. *Waterbury*, supra, 21 Conn. App. 76.

In *Hennessey* v. *Bristol Hospital*, 225 Conn. 700, 626 A.2d 702 (1993), the commissioner of health services sought to intervene in a case brought by the plaintiff physician against the defendant hospital. The plaintiff brought an action for an injunction to restrain the defendant from complying with a subpoena issued by the commissioner for records involving the plaintiff pursuant to an investigation of the physician. The plaintiff got a temporary injunction without notifying the commissioner, the would-be intervenor. The commissioner claimed that she was a necessary party, had a direct interest in the production that was adverse to the plaintiff and that she would be affected by a judgment

restraining the disclosure. The court held that the motion to intervene should have been granted because the intervenor had an interest that the judgment affected. The court reasoned that although the commissioner had brought a separate action for enforcement of her subpoena, that action was not necessarily sufficient to protect her interest because if she prevailed in that action and could therefore enforce the subpoena, there could be a conflicting injunction issued by another court from which she could not appeal. Id., 704. Similarly, in the present case, if the seven priests could not intervene and successfully brought a separate action to enjoin the production of their records, that injunction would conflict with any order of disclosure issued in this case, from which order they could not appeal.

A significant case in which the intervenor had no direct interest in the judgment as between the two parties to the litigation and was allowed to intervene is *Milford* v. *Local 1566*, supra, 200 Conn. 98. The intervenor was the state board of mediation and arbitration, and the case involved the vacation of an arbitration award in an employment dispute, the outcome of which was of no interest to the board. The intervention was granted to allow the board to defend the validity of its arbitration procedures. The motion of the board in the trial court did not indicate whether it sought intervention as of right or permissively, and our Supreme Court upheld the action as a permissive intervention, pursuant to rule 24 (b). It used, however, the same four criteria as federal and state cases use for intervention as of right pursuant to rule 24 (a). Id., 94. It also used the criteria of prejudice to the existing parties and the necessity or value of the intervention in terms of resolving the controversy.

The court, in its reasoning to establish standing of the board to intervene, used an aggrievement test, that is, whether the board had a specific personal and legal

interest that would be specially and injuriously affected by the decision. Id., 96; see also *United States* v. *American Telephone & Telegraph Co.*, supra, 642 F.2d 1285. Two of the four criteria for the application of rule 24, namely the direct and substantial interest in the subject matter, and the impairment to the movant's interest if he or she is not involved in the case are, in essence, equivalent to the test for aggrievement. Thus, the case openly subscribes to the use of federal rule 24 and sub silentio approves the use of the same criteria in both federal and state cases involving intervention as of right. It also establishes that an intervenor need not have a direct interest in the judgment as between the existing parties to the litigation.

A review of the facts involved in some federal cases interpreting rule 24 (a) is also instructive in resolving the issue raised in this appeal. Groups representing white, female and Asian-American police officers, members of a city airport and parks police were allowed to intervene as of right to contest a consent decree negotiated in settlement of racial discrimination claims in a Title VII action brought by African-American and Hispanic-American police officers. *Edwards* v. *Houston*, supra, 78 F.3d 1006. A newspaper and a reporter of that newspaper demonstrated a sufficient interest to allow intervention for the purpose of objecting to the sealing of a file on constitutional grounds in a breach of contract claim brought by a city against a real estate developer even though the intervenors asserted no personal right or interest in the outcome of the case. *Hartford* v. *Chase*, 733 F. Sup. 533 (D. Conn. 1990), rev'd on other grounds, 942 F.2d 130 (2d Cir. 1991).

Intervention as of right was granted to a corporation that asserted a direct interest in the outcome of an interlocutory discovery order. *United States* v. *American Telephone & Telegraph Co.*, supra, 642 F.2d 1295. The court reasoned that the word "action" as used in

rule 24 (a) requires a flexible interpretation in order to favor intervention for individual collateral issues when appropriate to protect the limited nature of an intervenor's interest. Id., 1291. "To bar intervention for collateral discovery issues merely because they do not concern the subject matter of the overall action would in many cases defeat the general purpose of intervention." Id., 1292.

Even before rule 24 (a) was amended,[10] intervention was allowed in the discovery phase of a case to protect the divulging of trade secrets. *Formulabs, Inc.* v. *Hartley Pen Co.*, 275 F.2d 52 (9th Cir.), cert. denied, 363 U.S. 830, 80 S. Ct. 1600, 4 L. Ed. 2d 1524 (1960).

A client whose lawyer has been served with a subpoena to produce documents relating to the client should be allowed to intervene as of right in a proceeding. *In re Katz*, 623 F.2d 122, 125 (2d Cir. 1980). Vietnam veterans have been allowed to intervene in a class action between the Agent Orange Plaintiffs' Management Committee and multiple chemical companies to challenge discovery orders to unseal documents. *In re Agent Orange Product Liability Litigation*, 821 F.2d 139, 141 (2d Cir.), cert. denied sub nom. *Dow Chemical Co.* v. *Ryan*, 484 U.S. 953, 108 S. Ct. 344, 98 L. Ed. 2d 370 (1987).

We now briefly review federal and Connecticut decisions to determine whether the oft-cited four prongs for intervention are present in this case. If any one of the four prongs is missing, the motion to intervene as of right should be denied. *Edwards* v. *Houston*, supra, 78 F.3d 999; *State Board of Education* v. *Waterbury*, supra, 21 Conn. App. 72.

The necessity for showing that a would-be intervenor made a timely request for intervention involves a deter-

---

[10] See footnote 8.

mination of how long the intervenor was aware of an interest before he or she tried to intervene, any prejudicial effect of intervention on the existing parties, any prejudicial effect of a denial on the applicant and consideration of any unusual circumstances either for or against timeliness. *Edwards* v. *Houston*, supra, 78 F.3d 1000. There are no absolute ways to measure timeliness. Id. The requirement that the request to intervene be prompt is applied more leniently if intervention as of right is sought, rather than permissively. *Horton* v. *Meskill*, supra, 187 Conn. 194. A trial court's finding that timeliness exists or does not is a question of fact and is described as a discretionary action. See *Washington Trust Co.* v. *Smith*, supra, 241 Conn. 744.

The plaintiffs argue on appeal that the motion to intervene was untimely, but that the trial court did not deny the motion to intervene because the seven priests were untimely in bringing it. We have no way, therefore, to review whether the court properly exercised its discretion to deny intervention on the basis of untimeliness. Furthermore, the record does not reveal that the plaintiffs argued to the court that the seven priests made an untimely motion. The motion to intervene is dated April 29, 1998. At the time, a motion by the Diocese for summary judgment dated January 21, 1998, had not yet been decided. In the event that summary judgment had been granted, there would be no necessity to intervene to protest any discovery orders.

The timeliness prong also considers any prejudice caused to the seven priests if the court denies intervention. In the present case, if the seven priests had no right to challenge a disclosure order, the order would thus become unassailable. The plaintiffs argue that the seven priests have not identified any greater right or protection that intervention would confer than what the trial court has already permitted. The court allowed the seven priests to file a motion to quash and offered

them a full hearing on their motion. According to the plaintiffs, intervention is unnecessary because "[t]he court allowed them all the relief they sought except for party status." This contention, however, " 'ignores the legal rights associated with formal intervention, namely the briefing of issues, presentation of evidence, and ability to appeal.' " *Edwards* v. *Houston*, supra, 78 F.3d 1003. The grace of the court is not a substitute for formal intervention with its concomitant rights.

The second and third tests for intervention as of right have been satisfied here. The seven priests have a direct and personal interest in arguing to protect the release of personnel files relating to them. General Statutes § 31-128f (2) establishes that interest. We rely on the many cases, Connecticut and federal, previously cited, on which to base our conclusion that the seven priests have a direct and substantial interest in the proceedings relating to discovery and production of records involving them, and that their interest would be impaired without their involvement at this stage of the proceedings. See *United States* v. *American Telephone & Telegraph Co.*, supra, 642 F.2d 1295. Whether the documents should in fact be released is not the issue. *Hennessey* v. *Bristol Hospital*, supra, 225 Conn. 704.

Because the test for intervention as of right is conjunctive, the seven priests must satisfy the fourth and final prong, a demonstration that no existing party adequately represents their interests. The seven priests have met this showing.

The would-be intervenor bears the burden of demonstrating inadequate representation by an existing party. *Edwards* v. *Houston*, supra, 78 F.3d 1005. The most significant factor in assessing the adequacy of representation is how the interests of the absentees compare with the interests of the present parties; the weight of the would-be intervenors' burden varies accordingly. If,

for instance, the interests are identical[11] or there is a party charged by law with representing a proposed intervenor's interest,[12] a presumption of adequate representation arises that the would-be intervenor can overcome only through a compelling showing of why this representation is *not* adequate. Id. At the other end of the spectrum, a presumption of inadequacy arises when an absentee must rely on his opponent or one whose interests are adverse to his.

The facts of the present case give rise neither to a presumption of adequacy nor inadequacy. The seven priests have not asserted that their interests are directly adverse to those of the defendants, and there is clearly no party charged by law with representing their interests. Moreover, the defendants' interests are similar, but not *identical* to those of the seven priests. The defendants' primary interest necessarily entails the defense of the liability claims, not necessarily the disclosure of the documents. See *LaRouche* v. *Federal Bureau of Investigation*, 677 F.2d 256, 258 (2d Cir. 1982).

The burden for establishing inadequate representation of similar interests is minimal. Indeed, the United States Supreme Court has acknowledged that one successfully establishes inadequate representation "if the

[11] Courts have denied intervention to shareholders in derivative suits; see *In re General Tire & Rubber Co. Securities Litigation*, 726 F.2d 1075, 1087 (6th Cir.), cert. denied sub nom. *Schreiber* v. *Gencorp, Inc.*, 469 U.S. 858, 105 S. Ct. 187, 83 L. Ed. 2d 120 (1984); to insurance agents in actions between insurer and insured; see *Continental Graphic Services, Inc.* v. *Continental Casualty Co.*, 681 F.2d 743, 745 (11th Cir. 1982); and to remaindermen under a trust and heirs of an estate in an action brought by fiduciaries; see *Peterson* v. *United States*, 41 F.R.D. 131, 134–35 (D. Minn. 1966); all on the basis of identical interests.

[12] Absent a compelling showing otherwise, a court will assume that the United States adequately represents the public interest in antitrust actions; see *Sam Fox Publishing Co.* v. *United States*, 366 U.S. 683, 81 S. Ct. 1309, 6 L. Ed. 2d 604 (1961); in school desegregation cases; see *United States* v. *South Bend Community School Corp.*, 692 F.2d 623 (7th Cir. 1982); and in other similar causes of action.

applicant shows that representation of his interest 'may be' inadequate . . . ." *Trbovich* v. *United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972). The particular circumstances of each case will dictate whether the absentee has an interest different from that of an existing party, and doubts should be resolved in favor of intervention.[13] *United States* v. *American Telephone & Telegraph Co.*, supra, 642 F.2d 1293.

A brief examination of similar cases proves illustrative for resolution of the issue of adequate representation in this case. Inadequate representation was recognized where an intervenor asserted that his fifth amendment interests were threatened, "and that his attorney cannot be expected to protect those interests by being held in contempt, [which] presents a paradigmatic case of entitlement to intervention as of right." *In re Katz*, supra, 623 F.2d 125. Differences in possible harm constitute a legitimate factor in assessing whether interests are identical for purposes of adequate representation. *United States* v. *American Telephone & Telegraph Co.*, supra, 642 F.2d 1293.

In *Armada Broadcasting, Inc.* v. *Stirn*, 183 Wis. 2d 463, 516 N.W.2d 357 (1994), a teacher sought intervention as of right in a mandamus action brought by a broadcaster directing the school district and district

---

[13] This flexible, liberal approach to determining whether present parties adequately represent an absentee's interest is wholly consistent with the purpose of the amendment to rule 24 (a). During the amendment procedure, the advisory committee on civil rules was urged to abandon any consideration of adequacy of representation and allow the applicant to be the sole judge as to whether his interests were adequately represented. The committee ultimately rejected the elimination of this factor for fear that it would " 'break in rudely on ideas of fiduciary representation.' " 7C C. Wright, A. Miller & M. Kane, Federal Practice & Procedure, (2d Ed. 1986) § 1909, p. 316. Nonetheless, the postamendment cases illustrate that courts are liberal in finding that where one is willing to bear the cost of separate representation, he may not be adequately represented.

administrator to provide for inspection of a report on sexual harassment and the teacher's grievance against the district. The Supreme Court of Wisconsin allowed the teacher to intervene as of right because "[one] cannot expect the District to defend the mandamus action with the vehemence of someone who is directly affected by public disclosure of the report. The personal nature of the interests at stake in the . . . report make [the teacher] the best person to protect those interests." Id., 476.

Inadequate representation was demonstrated where a party could have argued the intervenor's position, but the intervenor "was in a better position to defend its own procedures." *Milford* v. *Local 1566*, supra, 200 Conn. 95. Likewise, representation was deemed inadequate where the applicants' "direct and limited interest" was "quite distinguishable" from broad, general concerns of the plaintiffs in that case. *State Board of Education* v. *Waterbury*, supra, 21 Conn. App. 74.

In the present case, the interests of the seven priests and the defendants are not in sharp disalignment nor are they identical. The seven priests have persuasively argued that the defendants may not adequately represent their interest in preventing the disclosure of their personnel records, noting that the Diocese is unlikely to "undergo the penalties of contempt in order to preserve someone else's privilege." Like the teacher in *Armada Broadcasting, Inc.*, who was uniquely capable of vehemently defending against disclosure of private files, the seven priests in this case are undoubtedly in the best position to protect their interest in nondisclosure. Moreover, the seven priests' limited and discrete purpose of preventing disclosure is distinguishable from the defendants' general concern in defending the liability claims, and the defendants and the seven priests do not face identical harm. The possibility of divergence of interests need not be great. See *Natural Resources Defense*

*Council, Inc.* v. *United States Nuclear Regulatory Commission*, 578 F.2d 1341, 1346 (10th Cir. 1978). The seven priests have met a minimal showing of inadequate representation of their interest by an existing party.

We conclude that the seven priests should have been permitted to intervene *as of right* in the case.[14]

A successful intervenor is typically granted status as a party plaintiff or a party defendant. In the present case, however, the seven priests did not seek such status. In their motion to intervene, they sought to intervene as of right "for the well-defined, limited purpose of filing a motion to quash and for a protective order, and otherwise to prevent disclosure of private, confidential information from their respective personnel file records." It is for this discrete purpose that the seven priests, on remand, are to be granted intervention as of right.

A court has the authority to grant intervention limited to particular issues, and such limited intervention is not intended to allow enjoyment of all the prerogatives of a party litigant.[15] See, e.g., *United States* v. *American Telephone & Telegraph Co.*, supra, 642 F.2d 1295 (allowing telecommunications company to intervene for limited purpose of appealing District Court's discovery order); *Bradley* v. *Milliken*, 620 F.2d 1141, 1143 (6th Cir. 1980) (permitting intervention for limited purpose of presenting evidence on question of de jure segregation); *Smuck* v. *Hobson*, 408 F.2d 175, 182 (D.C. Cir. 1969) (en banc) (limiting intervention to issues of order that relate to intervenors' interests). Furthermore, the

---

[14] The seven priests argued in the alternative that the trial court abused its discretion in denying their motion for permissive intervention. Because we conclude that the seven priests are entitled to intervention as of right, we need not address the merits of this issue.

[15] A court also has the authority to dismiss intervenors once their interest in the matter has expired. Federal cases illustrate that intervention as of right does *not* grant absolute entitlement to continue as a party until termination of the suit. See, e.g., *Morgan* v. *McDonough*, 726 F.2d 11 (1st Cir. 1984).

advisory committee note to the 1966 amendment of rule 24 (a) contained the following significant statement: " 'An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.' " C. Wright, A. Miller & M. Kane, Federal Practice & Procedure (2d Ed. 1986) § 1922, p. 505. In light of these cases and the committee note, the seven priests on remand are to be granted intervention for the *unique* purpose of contesting the disclosure of private, confidential files and issues relating to this interest.

The judgment denying the motion to intervene as of right is reversed and the case is remanded with direction to grant intervention as of right for the limited purpose of filing a motion to quash and for a protective order, and otherwise to prevent disclosure of private, confidential information from the intervenors' respective personnel files.

In this opinion the other judges concurred.