[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO INTERVENE (#130): MOTION TO STAY DISCOVERY (#131): MOTION TO QUASH SUBPOENAS (#132. #133)
The office of the chief state's attorney, division of criminal justice (hereinafter, "DCJ"), filed a motion to intervene, to stay discovery and to quash deposition subpoenas in the present civil action between the plaintiff, commissioner of environmental protection, and the defendants, Sound Manufacturing, Inc., Brian Cote, Daniel Malchman, and Charles Lavallee. The DCJ charged the defendants on September 11, 1998, with various environmental crimes under Title 22a of the Connecticut General Statutes that concern the same course of conduct involved in this civil action, which was filed on April 6, 1999.
The DCJ argues that the materials and information sought by the defendants' subpoenas are protected by privileges established under the common law, statute and the rules of court. Furthermore, the DCJ argues that the defendants should not be allowed to circumvent the limitations on criminal discovery by taking civil depositions of the DCJ's criminal inspector, Matthew Schroeder, and the department of environmental protection (DEP) inspector and witness, David Stokes.[1] Lastly, the DCJ argues that a stay of discovery is warranted because the public interest CT Page 15903 in the criminal prosecution outweighs the defendants' private interests in the civil suit.
The defendants argue that the state is already represented and that the DCJ is not authorized to intervene in the civil proceeding. They argue that in Connecticut, as opposed to the federal system, there is a clear distinction between civil and criminal jurisdiction. Furthermore, they set forth a number of factors which determine, when balanced, whether the court should stay an action. They argue that the factors clearly weigh in their favor and that the motion to stay discovery should be denied.
It is well established that new parties may be added and summoned in, at any stage of the action, as the "interests of justice" require. General Statutes § 52-108; Practice Book § 9-19. The interest that the DCJ is trying to preserve is the integrity of the criminal prosecution process. There is no question that the federal Department of Justice is allowed to intervene in a civil action. "As a rule, district courts in this Circuit have allowed the government to intervene in civil actions — especially when the government wishes to do so for the limited purpose of moving to stay discovery. . . . [T]he government has a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery in the criminal matter." (Citations omitted; internal quotation marks omitted.) Twenty First Century Corp. v. LaBianca, 801 F. Sup. 1007,1009 (E.D.N.Y. Sept. 25, 1992).
The DCJ argues that the same interests and concerns that allow the federal government to intervene in a civil proceeding are identical to the interests and concerns within the state criminal process as well. The Connecticut courts have established that the criminal prosecution process must be protected. In Kelly v. Freedom of Information Commission,221 Conn. 300, 603 A.2d 1131 (1992), the FOIC had concluded that disclosure of arrest reports was required by § 1-19 (a) of the Freedom of Information Act. The Connecticut Supreme Court disagreed. "[T]he plaintiff has demonstrated that his present interest in the unimpeded prosecution of criminal cases is jeopardized by the FOIC decision that arrest reports are disclosable by local and state police, in some instances, prior to trial. . . . Although prospective in natures. the order of the FOIC has a present chilling effect on the actions of the police that in turn affects the present discovery and prosecution practices of the plaintiff. . . . The plaintiff and the entire division of criminal justice rely upon the statutes and rules that regulate criminal discovery and they are specially interested in the proper prosecution of criminal cases." (Citations omitted.) Id., 313-14.
Furthermore. in Seebeck v. State, 246 Conn. 514, 717 A.2d 1161 (1998), CT Page 15904 the petitioner sought review, arguing that the trial court abused its discretion in rejecting his discovery requests. The state argued that the information was protected by a qualified law enforcement privilege that the Supreme Court has long recognized. "[I]nformation disclosed to a state's attorney for the purpose of enabling him to perform the duties of the office is privileged upon grounds of public policy, and an adverse party has no right to demand its production." (Internal quotation marks omitted.) Id., 546, quoting State v. Zimnaruk, 128 Conn. 124, 127,20 A.2d 613 (1941). The court went on to say that "[a]s the state notes, the reason for this privilege is to aid the state's attorney and the police in conducting investigations by encouraging people to disclose information without fear of embarrassment through subsequent, needless public disclosure. . . . [T]his privilege, of course, yields to the state's obligation to disclose information that is exculpatory. . . ." Seebeckv. State, supra, 246 Conn. 546. Clearly, information obtained by law enforcement officials and the state's attorney is protected by the rules of criminal discovery. To allow the defendants in the present civil action to circumvent these rules would be to undermine the integrity of the criminal process itself.
The defendants argue that the state is already represented through the DEP. Furthermore, they argue that discreet, separate jurisdictions were created by statute [§ 51-277 (a)] for the sole purpose of keeping the criminal division of the state out of civil proceedings. For this proposition, they cite the legislative history of the statute and focus on the case of State v. O'Neill, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 487713 (June 9, 1998,Holzberg, J.). The O'Neill court, however, addressed the issue of the chief state's attorney's office initiating a civil action, not intervening in one.[2] Similarly, the defendants' argument with regard to the legislative history is unpersuasive. The defendant argues that the history of § 51-277 (a) confirms the intent to limit the DCJ's jurisdiction to criminal matters. The history says nothing, however, about allowing the DCJ to intervene in a civil action for a limited purpose.
The courts have established when a plaintiff should be granted intervention as of right. In Rosado v. Bridgeport Roman Catholic DiocesanCorp., 60 Conn. App. 134, 758 A.2d 916 (2000), the Appellate Court granted seven priests the right to intervene "for the well-defined, limited purpose of filing a motion to quash and for a protective order, and otherwise to prevent disclosure of private, confidential information from their respective personnel file records." (Internal quotation marks omitted.) Id., 152. The court went on to say that "[i]nadequate representation was demonstrated where a party could have argued the intervenors' position, but the intervenor was in a better position to CT Page 15905 defend its own procedures." (Internal quotation marks omitted.) Id., 151. Furthermore, "[a] court has the authority to grant intervention limited to particular issues. . . ." Id., 152; see also Smuck v. Hobson,408 F.2d 175, 182, 132 U.S. App. D.C. 372 (D.C. Cir. 1969) (en banc) (limiting intervention to issues of order that relate to intervenors' interests).
Lastly, the court has the authority to stay an action in its entirety
if the interests of justice require it. In the present case, the DCJ is seeking to intervene for the limited purpose to stay discovery only, while the criminal matter is still pending. "It is unequivocally a discretionary power of a tribunal to stay proceedings where there are parallel civil and criminal proceedings. The Constitution, therefore, does not ordinarily require a stay of civil proceedings, pending the outcome of criminal proceedings. Nevertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery or impose protective orders and conditions when the interests of justice seem to require such action. . . . The court must make such determinations in the light of the particular circumstances of the case." Farricielli v.State, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 5386369 (January 8, 1997, MeWeeny, J.), quotingSecurities and Exchange Commission v. Dresser Industries, Inc.,628 F.2d 1368, 1375, cert. denied, 449 U.S. 993, 101 S.Ct. 529,66 L.Ed.2d 289 (1980). Furthermore, the court in Twenty First Century Corp.v. LaBianca, supra, 801 F. Sup. 1010, in determining when the interests of justice require a stay of action, listed a number of factors that should be balanced.[3] The court went on to say that "a trial judge should give substantial weight to [the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." (Internal quotation marks omitted.) Id., quoting Campbellv. Eastland, 307 F.2d 478 (5th Cir. 1962), cert. denied, 371 U.S. 955,83 S.Ct. 502, 9 L.Ed.2d 502 (1963).
The DCJ is not seeking to stay the entire action. The trial date for the criminal matter has been set. The public interest in the integrity of the criminal process outweighs the harm that the defendants may suffer from a delay of the discovery proceedings in the civil matter. For the foregoing reasons, the DCJ's motion to intervene, to stay discovery and to quash the deposition subpoenas is granted.
Mary Hennessey, J.