[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiff Gail DeCorso filed a two count second substituted complaint on November 13, 2000, against the defendant, Watchtower Bible and Tract Society of New York, Inc., (Watchtower), the corporate organization of Jehovah's Witness religion, and several of its agents including the named defendants, Charles E. Bradshaw, Charles Thomas, James R. Waddington and George Griffin.[1] Count one alleges intentional infliction of emotional distress and count two alleges negligent infliction of emotional distress. This action arises from an allegedly abusive marital relationship between the plaintiff and her husband, Michael DeCorso, who were both baptized into the Jehovah's Witness religion. The plaintiff alleges that, in accordance with the teachings of Watchtower, she was required to accept instruction from Watchtower officials in the matters of her daily life and that members of the congregations were invited to approach the church overseers or elders whenever they needed help. The plaintiff maintains that she sought assistance from the defendants in escaping her husband's violence and that the defendants were aware of her situation and did nothing to protect her. Furthermore, the plaintiff alleges that Watchtower had a strictly enforced rule prohibiting its members from litigating in the civil court. Hence, the plaintiff did not commence this action until her membership with Jehovah's Witnesses was terminated, which she refers to as her "disfellowshipping."
Presently before the court is the defendants' motion for summary judgment. The following additional facts, alleged by the plaintiff, are CT Page 216 relevant to the disposition of this motion. On August 2, 1999, the plaintiff filed a four count second revised complaint alleging intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract and breach of fiduciary duty. On March 10, 2000, the court, Pellegrino, J., granted the defendants' motion to strike all four counts of the plaintiff's complaint. Counts one, two and four were stricken on statute of limitation grounds, and count three was stricken on first amendment grounds. On April 3, 2000, the plaintiff entered a pro se appearance in lieu of prior legal counsel and filed an amended complaint. On April 28, 2000, the defendants filed an objection to the amended complaint. On May 19, 2000, the court, Wiese, J.,
sustained the defendants' objection to the amended complaint filed on April 3, 2000, and indicated that because the plaintiff's prior pleading had been stricken, the new pleading should have been a substitute complaint rather than an amended complaint.
On June 2, 2000, the plaintiff filed a four count substituted complaint alleging intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract and breach of fiduciary duty. On July 7, 2000, the defendants filed a motion to strike the substituted complaint on the following grounds: (1) that the statute of limitations barred counts one, two and four; (2) counts one, three and four failed to state a claim upon which relief could be granted; and (3) the first amendment of the United States constitution barred the entire complaint. On October 13, 2000, the court, Wiese, J., denied the motion to strike as to counts one and two and granted the motion as to counts three and four. The court found that the statute of limitations did not bar the complaint because the parties no longer agreed to the relevant dates and that the substituted complaint alleged dates which brought the cause of action within the statute of limitations. The court further held that "[t]he plaintiff has alleged conduct of the defendants sufficient to meet the elements of intentional and negligent infliction of emotional distress for the purposes of a motion to strike." DeCorso v. WatchtowerBible and Tract, Superior Court, judicial district of Waterbury, Docket No. 145296 (October 12, 2000, Wiese, J.).
On November 13, 2000, the plaintiff filed a second substituted complaint, which is now the operative complaint. On September 17, 2001, the defendants filed a motion for summary judgment and supporting memorandum as to both counts of the complaint on the following grounds: (1) the alleged misconduct does not meet the elements necessary to succeed on a claim for negligent infliction of emotional distress or intentional infliction of emotional distress; and (2) the first amendment
of the United States constitution bars the second substituted complaint because inquiry into the plaintiff's claim would constitute "excessive entanglement" on the part of the state into church affairs. On October CT Page 217 15, 2001, the plaintiff filed a response and objection to the motion for summary judgment.
 DISCUSSION
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Community Action for Greater Middlesex County,Inc. v. American Alliance Ins. Co., 254 Conn. 387, 397, 757 A.2d 1074
(2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted.) Appleton v. Board of Education,254 Conn. 205, 209, 757 A.2d 1059 (2000). "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." (Internal quotation marks omitted.) Pion v. SouthernNew England Telephone, 44 Conn. App. 657, 663, 691 A.2d 1107 (1997). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031
(1988)
 A. Count one: Intentional Infliction of Emotional Distress
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.)Appleton v. Board of Education, supra, 254 Conn. 210.
In support of their motion for summary judgment, defendants argue that the plaintiff's allegations do not support a claim that Watchtower's agents knew or should have known that any alleged inaction on their part would result in emotional distress to the plaintiff. The defendants CT Page 218 further argue that their conduct was not extreme and outrageous. Specifically, the defendants argue that the plaintiff's allegations that they failed to protect her from her husband's abuse and made negative comments about her cannot be viewed as exceeding all bounds usually tolerated by decent society. The defendants also argue that it was not their conduct, but it was the conduct of the plaintiff's husband that caused her distress.
In response, the plaintiff maintains that the defendants' actions were extreme and outrageous in that they failed to render assistance to her and advised her to remain in a physically and emotionally abusive marriage. As a result, the plaintiff alleges that the defendants caused her to suffer both physical and extreme emotional distress that resulted in her losing weight, losing sleep, being hospitalized, and receiving other treatment. The plaintiff further maintains that the defendants quoted depositions to support their motion for summary judgment, but they left out certain provisions, and misrepresented and oversimplified facts. The complaint specifically alleges the following. The plaintiff first sought the assistance of the defendant Bradshaw in 1976, and her conversations with Bradshaw continued for ten years at varying intervals. Bradshaw discouraged her from supplying any details about her husband, demonstrated discomfort at the topic, often told the plaintiff he thought she might have caused her own problems, and once reprimanded her for discussing her husband's abuse with someone other than a congregation elder. The plaintiff sought the assistance of Waddington from 1978 through 1985, who encouraged her to stay with her husband and refused to look at marks on her back she sustained from her husband. Waddington appeared to be entertained and often smiled when the plaintiff discussed some of. the difficulties in her home. The plaintiff sought the assistance of Griffin, who also refused to look at the plaintiff's marks of abuse, and the defendant's agent, Ronald Blackwell, who informed her to do whatever her husband told her to do. The plaintiff also sought the assistance of Donald Frager, a special representative of Watchtower, who refused to speak to her and instructed her to talk to her husband.
The complaint further alleges that Waddington and Griffin sent letters to other congregation overseers making derogatory comments about the plaintiff, which included remarks that the plaintiff was headstrong and was an individual lacking in submission. The plaintiff sought assistance from Watchtower's legal department and they refused to provide arbitration for the purpose of reviewing her past abuses. The complaint also alleges that the defendants used slanderous means to discredit her, which culminated in her disfellowshipping.
"Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form CT Page 219 the basis for an action based upon intentional infliction of emotional distress." (Internal quotation marks omitted.) Appleton v. Board ofEducation, supra, 254 Conn. 211. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which recitation of the facts to an average member of community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Mellay v. Eastman Kodak Co., 42 Conn. Sup. 17,20, 597 A.2d 846 (1991). "The issue of whether the defendant's conduct rises to the level of extreme and outrageous behavior is a question of law to be decided by the court." Zabensky v. Lawrence MemorialHospital, Superior Court, judicial district of New London, Docket No. 10783 (August 5, 1999, Martin, J.); see also Petyan v. Ellis,200 Conn. 243, 255, 510 A.2d 1337 (1986) (upheld the trial court directing a verdict for the defendant on the plaintiff's claim of intentional infliction of emotional distress)
Plaintiff's allegations do not demonstrate that the defendants' conduct is "so extreme in degree that it goes beyond all bounds of decency and is regarded as atrocious, and utterly intolerable in a civilized society." Id. Assuming the truth of plaintiff's factual assertions, the court cannot conclude, as a matter of law, that such behavior "exceed[ed] all bounds usually tolerated by decent society." Id. While plaintiff's allegations are troubling, they must be considered in the context of efforts made as part of the church's pastoral counseling. While the counselor's suggestions may have been ill advised, indeed insensitive, they do not meet the threshold of extreme outrageous conduct required by applicable precedents. In finding that the plaintiff's claim for intentional infliction of emotional distress fails as a matter of law, the court need not reach the constitutional issue as to count one of the complaint.
 B. Count two: Negligent Infliction of Emotional Distress
"To succeed in a claim for negligent infliction of emotional distress, the plaintiff must prove two facts: (1) negligence on the part of the defendant; see Urban v. Hartford Gas Co., 139 Conn. 301, 304, 93 A.2d 292
(1952); and (2) that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.'Parsons v. United Technologies Corp., 243 Conn. 66, 88, 700 A.2d 655
(1997); Urban v. Hartford Gas Co., supra, 139 Conn. 307." Himberg v.Shure Funeral Home, Superior Court, judicial district of New Haven at CT Page 220 Meriden, Docket No. 266920 (February 20, 2001, Robinson-Thomas, J.). "[R]ecovery for unintentionally caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact." Montinieri and Telephone Co. v. Southern New EnglandTelephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978).
"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury."Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 566, 707 A.2d 15
(1998). "Only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." Shore v. Stonington, 187 Conn. 147, 151-52,444 A.2d 1379 (1982). "The existence of the duty is a question of law whereas whether there was a breach of that duty is a question of fact."Tryon v. Town of North Branford, 58 Conn. App. 702, 715, 755 A.2d 317
(2000). "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Internal quotation marks omitted.) Burns v. Board of Education,228 Conn. 640, 646, 638 A.2d 1 (1994).
The plaintiff alleges that the defendants had a duty to exercise reasonable care in counseling and directing the plaintiff with respect to her family life, that the defendants breached that duty, and that any reasonable person in the defendants' position would have known that such acts and omissions would cause the plaintiff to suffer severe emotional distress. The complaint further alleges that the plaintiff suffered extreme emotional distress in that she was unable to eat, lost sleep, was hospitalized, and developed chronic conditions affecting her to date.
The defendants argue that they owed no duty to the plaintiff. The defendants introduced depositions of the plaintiff, Bradshaw, Waddington, Thomas, and Griffin. In Waddington's deposition (Exhibit F, p. 63), he indicated that the only type of counseling provided to the plaintiff was spiritual. In Griffin's deposition (Exhibit G, p. 29), he also indicated that the nature of the counseling given to the plaintiff was spiritual and that the only type of counseling he can give is spiritual. In the plaintiff's deposition of July 27, 2001, (Exhibit E, p. 22), she was asked whether the counseling she received from the overseers was strictly spiritual in nature. The plaintiff responded, "They used the scripture and the principle, submit to your husband . . . (Exhibit E, p. 22.)
Having undertaken counseling of the plaintiff, the defendants may have assumed a duty to the plaintiff to use reasonable care in the course of CT Page 221 their counseling. See, e.g., Nally v. Grace Community Church of theValley, 763 P.2d 948 (1988) (Kaufman, J., concurring). Because the court cannot conclude, as a matter of law, that under the circumstances of this case, the defendants did not owe plaintiff a duty of reasonable care, it turns to the defendants' argument that even if they are not entitled to judgment as a matter of law, the court cannot entertain the plaintiff's claim because the first amendment of the United States constitution prohibits a court from entangling itself in matters of religion.
"The First Amendment to the United States Constitution forbids any law respecting the establishment of religion, or prohibiting the free exercise thereof. . . . The Free Exercise Clause prohibits excessive state entanglement with religion. . . . Although no Supreme Court decision has determined the applicability of the Free Exercise Clause of the First Amendment as a defense for a religious organization's negligent conduct, the Court has held that the first amendment does not create blanket tort immunity for religious institutions or their clergy, thus allowing clergy and clerical institutions to be sued for the torts they commit." (Citations omitted; internal quotation marks omitted.) Nutt v.Norwich Roman Catholic Diocese, 921 F. Sup. 66, 73 (D.Conn. 1995). "The common law doctrine of negligence does, not intrude upon the free exercise of religion, as it does not discriminate against [a] religious belief or regulate or prohibit conduct because it is undertaken for religious reasons." (Internal quotation marks omitted.) Id., 74. "Application of a secular standard to secular conduct that is tortious is not prohibited by the Constitution." Rosado v. Bridgeport Roman CatholicDiocesan Corp., 45 Conn. Sup. 397, 716 A.2d 967 (1998), rev'd. on other grounds, 60 Conn. App. 134, 758 A.2d 916 (2000).
The defendants specifically argue that the plaintiff's claim of negligent infliction of emotional distress is actually a disguised claim of clergy malpractice, which is barred by the first amendment. "The claim for clergy malpractice has been universally rejected by courts in the United States. See Dausch v. Rykse, 52 F.3d 1425, 1432, n. 4 (C.A.7, 1994) (collecting cases from state supreme courts holding no cause of action for clergy malpractice). . . ." Teadt v. St. John's EvangelicalChurch, 237 Mich. App. 567, 603 N.W.2d 816, 822 (1999). "Because of the differing theological views espoused by the myriad of religions in our state and practiced by church members, it would certainly be impractical, and quite possibly unconstitutional to impose a duty of care on pastoral counselors. Such a duty would necessarily be intertwined with the religious philosophy of a particular denomination or ecclesiastical teachings of the religious entity." Nally v. Grace Community Church ofthe Valley, 47 Cal.3d 278, 763 P.2d 948, 960, 253 Cal.Rptr. 97, 109
(1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159
(1989). CT Page 222
The defendants cite the July 27, 2001 deposition of the plaintiff. When asked if the defendants' counseling of the plaintiff was strictly spiritual, the plaintiff responded that the defendants used religious scripture and principle. (Defendants' Exhibit E, p. 22.) In Waddington's deposition (Defendants' Exhibit F, p. 63), he indicated that the type of counseling given to the plaintiff was spiritual. When asked if he counsels married couples, Griffin, in his deposition, indicated, "Yes, we do. We use the scriptures. Jehovah's the one who set up the first marital arrangement and then he set down the guidelines within the Bible about husbands loving their wives and cherishing them. So that's what we do. We help them appreciate what God says is the role of each individual within the marital arrangement whether it's the husband or the wife, how they can be successful." (Exhibit G, p. 30.)
The defendants have presented evidence to establish that their conduct involved spiritual counseling based on the teachings of Jehovah. Plaintiff has not countered that assertion in her objection. Under these circumstances, in order to determine whether the defendants breached a duty in providing spiritual counseling, the court would necessarily intertwine itself with the religious philosophy of the Jehovah's Witness religion. As the New York Appellate Court noted in considering a similar claim, "the insurmountable difficulty facing plaintiff . . . lies in the fact that it is impossible to show the existence of a fiduciary relationship without resort to religious facts. In order to consider the plaintiff's claims . . . the jury would have to weigh and evaluate the legitimacy of the plaintiff's beliefs, the tenets of the faith . . . and the nature of the healing powers of the church. To instruct a jury on such matters is to venture into forbidden ecclesiastical terrain."Lanford v. Roman Catholic Diocese Catholic Church of Brooklyn,677 N.Y.S.2d 436, 441 (1998).
Likewise, in this case a judicial review of plaintiff's claims would necessarily require an evaluation of the religious tenets of Jehovah's witness, the religious definition of the marital relationship and the discharge of pastoral responsibilities by the defendants. Such a review would impermissibly constitute excessive entanglement with religion. Accordingly, the defendants' motion for summary judgment as to the plaintiff's claim for negligent infliction of emotional distress is granted.
 CONCLUSION
For the foregoing reasons, the court grants the defendants' motion for summary judgment as to counts one and two of the plaintiff's second substituted complaint. CT Page 223
SO ORDERED.
ROBERT L. HOLZBERG